ED STANTON V. THE STATE.

No. 16499. Delivered March 7, 1934.
Rehearing Denied May 16, 1934.

The opinion states the case.

*E. A. Watson*, of Crosbyton, for appellant.

*Dennis Zimmermann*, Special Prosecutor, of Tulia, *Meade F. Griffin*, District Attorney, of Plainview, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment assessed at death.

The testimony adduced upon trial, briefly stated, is as follows: On the afternoon of January 22, 1933, the appellant, Glenn Hunsucker, and Bernice Inman, in a Ford coupe, drove to the town of Happy, engaged a cabin at a tourist camp, and some time before midnight left the cabin, drove up to a filling station and stopped. The night watchman saw them and started towards them and when they observed him approaching their car they drove away, passing close by the night watchman, and, after having driven several blocks, they drove up to another filling station and stopped again. The night watchman who had observed their movements and maneuvers again started towards them and when he reached a point about one and one-half blocks away, two men who had gotten out of said car re-entered it and hurriedly drove away on the highway leading towards Tulia. The night watchman then went to said filling station and found the pump unlocked and two gallons of gasolene pumped up into it. The door of the station was also unlocked. He, the night watchman, then went to the home of the owner of said filling station and informed him of what he had observed and found, and then called Mr. Moseley, the sheriff at Tulia, which is 18 miles from Happy. When the three in the Ford coupe drove into Tulia, Mr. Moseley, the sheriff, in his Buick car was already looking for them and endeavored to stop them, but they refused to stop, and he chased them up and down the streets and around town, firing his pistol four times, and finally got ahead of the Ford. In attempting to turn his car around, he backed his car into the ditch along the highway. In the meantime the Ford coupe had stopped in front of and near a filling station. The sheriff then told them to go back to town and just after the Buick car went into the ditch the

two men got out of the Ford coupe and the shooting ·began. They shot towards Mr. Moseley's car and when the shooting ceased they ordered the boy at the filling station to fill their car with gasolene and when he had complied with their demand they robbed him of all the money, pulled the telephone from the wire, and hurriedly drove away. Several months later the appellant and Hunsucker were located in some timbered country in New Mexico by the officers and in the attempt to arrest them Hunsucker was killed and so was one of the officers. The appellant escaped but was captured the next day. The appellant took the witness stand, and, according to his version, he, Glenn Hunsucker, and Bernice Inman stopped at Happy; that he was present at the filling station when John Moseley, the sheriff, was killed, but that he took no part in the killing. The boy at the filling station, an eyewitness to the shooting, testified that both men were shooting at Mr. Moseley; that two guns were being fired. When the appellant was arrested he had on a 45 caliber, Smith and Wesson pistol, which had been stolen from the postoffce at Quitaque on January 3, 1933. A ballistic expert testified that the bullets found at the scene of the Buick car in which Moseley was slain were fired from the Smith and Wesson pistol, the stolen gun.

The appellant filed exceptions to the court's main charge because the court had failed to submit the law of self-defense, and also excepted to paragraph 7 thereof, which reads as follows:

"The laws of this State further provide that in the prosecution of one charged with murder, the State or the defendant, shall, either or both, be permitted to offer testimony as to all the relevant facts and circumstances surrounding the homicide, and all the previous relationships existing between the accused and the deceased, if any, and all the relevant circumstances in this case that may show the condition of the mind of the accused at the time of the homicide, and that all such facts and circumstances, testimony and evidence in this case may be considered by the jury in determining whether the accused committed the homicide, and whether, if he did so, he was prompted and acted with his malice aforethought, and as to whether he was justified therein, and in determining the punishment to be assessed against the defendant, if he be found guilty; and in this case you may consider all the facts, circumstances and evidence, which have been admitted before you, for any and all of the purposes hereinabove in this paragraph enumerated."

Paragraph 14 of the court's main charge reads as follows:

"In this case the State was permitted to prove that the defendant has been charged elsewhere for felonies and that he has served sentences in the penitentiary, and you are instructed that the defendant is not on trial for said other offenses, if any, and you are not to consider such testimony for any purpose except as it may affect the credibility of the defendant as a witness, if it does, and it is for you, in your discretion, to determine whether or not such testimony affects the credibility or weight of defendant's testimony."

The court, after considering the objections and exceptions to his charge, amended the same and adequately instructed the jury as to the law of self-defense, and also added the following sentence to paragraph No. 7, to-wit: "and subject to the instruction in paragraph No. 14 of this charge as you may in your discretion determine." After the court had amended his charge in said particular, the appellant urged no further or other objections to the same. If the appellant was still dissatisfied with the charge as amended, it was incumbent upon him to file objections to the amended charge in order to avail himself of such objections, and in support of the views herein expressed we refer to the following authorities: Davis v. State, 56 S. W. (2d) 449; Jackson v. State, 280 S. W., 808; Hall v. State, 97 Texas Crim. Rep., 158.

The appellant also complains in his motion for new trial that one of the jurors had been guilty of corrupt conduct in that on his void dire examination he stated that he had no opinion as to what ought to be done about this case, whereas it was alleged that in truth and in fact he had formed and expressed an opinion to the effect that, if he was taken on the jury, he would inflict the death penalty. The State by written deniel controverted said allegation of the appellant and the court heard evidence on the issue thus formed, and overruled the appellant's contention. The juror testified upon the hearing of the motion for new trial as follows: "I don't know that I had an opinion about what should be done with defendant in this case if he was found guilty of the killing of John Moseley until the court charged me what to do. Of course, I have an opinion of what should be done with a fellow that would come along and shoot down an officer if he was found guilty. That opinion is that he ought to be given the death penalty. I am strictly in favor of that. That is the opinion I have since I heard the facts in this case. I didn't have that opinion before I heard the evidence. I didn't have any prior judgment in this case or any prejudice against the defendant. I didn't say a while ago that

I had an opinion before I went into the jury box as to what ought to be done with the man that killed John Moseley. I have a general opinion what ought to be done with any fellow that took anybody's life in cold blood. I never thought of being taken on the jury and I didn't know the evidence in this case until I heard the testimony. I had a general opinion that any man that was guilty of the murder of John Moseley ought to have the death penalty. In other words, if the facts justified the death penalty, I would be willing to give it. I wanted to hear the facts and consider them without prejudice. I hadn't given it any thought. I had never heard of the defendant until they brought him in for trial. I hadn't expressed any opinion whatever."

This is in substance all of the testimony that was introduced in support of said motion. The action of the trial judge in overruling the motion for new trial is binding upon this court as a decision in favor of the state of all matters upon the hearing of the motion upon which there is a substantial conflict of evidence. If our understanding of the facts as revealed upon the motion for new trial is correct, we are constrained to hold that the action of the trial court in overruling the motion finds support in the evidence and was well within the sound discretion of the court, and in support of the views here expressed we refer to the following cases, to-wit: Ross v. State, 267 S. W., 499; Glenn v. State, 89 Texas Crim. Rep., 13, 229, S. W., 521.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—A careful re-examination of the record in the light of the motion for rehearing leaves us of the opinion that nothing before this court would warrant a reversal of the judgment. The motion for rehearing is therefore overruled.

*Overruled.*