# Hugh McCann v. The State.

No. 17570.   Delivered May 22, 1935.
Rehearing Denied June 19, 1935.
On Application for Leave to File Second Motion for Rehearing June 26, 1935.

The opinion states the case.

*Arthur Holland,* of Belton, and *Joe J. Alsup,* of Temple, for appellant.

*Henry Taylor,* Dist. Atty., of Belton, and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment was assessed at death.

The record shows that on the 9th day of September, 1934, the appellant shot and killed Mrs. Davis on a street in the city of Temple. It seems that he had become infatutated with her and did not want her to accept the company of any other men. On the afternoon of the fatal day he appeared at the home of the deceased and told her son that if he ever caught her going with any other man he would shoot them both and then shoot himself. He left the home of the deceased in a Ford coupe about ten minutes before Mrs. Davis would be relieved from her duties for the day and drove in the direction of the place of business where she was employed. In a very short time thereafter the son heard the reports of gun shots and immedi-

ately went to where his mother was employed and found her dead on the sidewalk. The appellant, after having killed Mrs. Davis, entered his car and hurriedly drove away. A day or two later he was arrested in the city of San Antonio, taken to Belton and placed in jail, where he made a voluntary confession to the district attorney, which was introduced as evidence at his trial. The testimony introduced by the State indicates that jealousy was the motive which induced him to commit the act for which he was indicted. The only plea interposed by appellant was that of insanity.

By bill of exception No. 1 the appellant complains of the action of the trial court in overruling his application for a continuance based upon the ground that he had propounded interrogatories to Dr. McCormick of Little Rock, Arkansas, and had forwarded them to the Chief Justice of the Supreme Court of that state with the request that he take the deposition of Dr. McCormick, but the Chief Justice returned the same with a notation that the Chief Justice of the Supreme Court of Arkansas had no legal authority to take depositions. That he expected to prove by the deposition of said witness that he, the witness, had treated appellant some ten years ago for a disease denominated as syphilis. The State contested said motion and admitted that Dr. McCormick would testify to the facts sought to be established by his deposition and that the same were true. It is our opinion that under the circumstances the bill of exception fails to show error. See Brown v. State, 174 S. W., 360, and authorities therein referred to.

By bills of exception Nos. 2, 2a, 2b, 2c, and 2d the appellant complains of the action of the trial court in permitting the State to prove by the jailor, the sheriff, and his deputy that they observed appellant from the time he was placed in jail up to the time of his trial but that they did not see him do anything, nor did they hear him say anything which indicated an unsound mind. The appellant's objection to said testimony was that his defense was temporary insanity, and the observations of appellant by the witnesses occurred after the commission of the alleged offense. The court qualified said bills of exception and in his qualification states that appellant introduced testimony of general insanity produced by a veneral disease; that the testimony objected to was admitted in rebuttal of said defensive theory. The bills as thus qualified fail to disclose any error. In the case of Langhorn v. State, 289 S. W., 57, this court said: "If this court should attempt to say that, before a non-expert witness should be allowed to give testimony on this point, he

must have had so much opportunity for observation, or such a length of association, or detail such and such facts with particularity, this would manifestly not fit the cases differing in facts. * * * A non-expert witness, who has shown reasonable opportunity to observe the acts and conduct of the party inquired of, may state that he has never observed anything therein which led him to believe or conclude such party of unsound mind. * * * While a non-expert witness may not give his opinion upon a hypothetical case, still, it seems to us that if he testifies to actual personal conversations with and observation of the party whose sanity is under investigation, he may be allowed to express his opinion, subject always to the right of cross-examination, so that, if the opinion is entitled to slight weight by reason of lack of length of association or opportunity to form the opinion expressed, this may be brought out before the jury."

We are of the opinion that the question here presented falls within the rule in the case referred to.

By another bill of exception the appellant complains of the following argument of the district attorney, to-wit: "Howard McCann testified to it. Why didn't some other person able to testify to the same thing if it was so conspicuous?" The objection urged against this argument was that it was a reference to appellant's failure to testify. The bill is vague and indefinite and does not appraise this court what part of Howard McCann's testimony the district attorney was discussing. Except for the fact that the jury imposed the extreme penalty we would look no further to ascertain the testimony of said witness. From the statement of facts it appears that the witness, Howard McCann, on one occasion went to San Antonio with appellant in a truck loaded with merchandise; that he left appellant in charge of the truck to guard it, but on his return he found that appellant had left the truck; that he, the witness, immediately went to search for him and found him, appellant, in a Mexican gambling and bootlegging shop where they were all doped up; that on their return to the truck appellant stated that he had been robbed and slugged and had lost his shirt somewhere; that the witness, Howard McCann, then employed another man to stay with appellant at the truck and guard it, but upon his return he found that both had gone to the Mexican dope shop; that on said occasion the appellant went up Commerce Street without his shirt to a detective's office, Neither the party whom the witness had hired to stay and guard the truck with appellant, nor any person from the detective's of-

fice, or from the Mexican dope shop, or anywhere else, was called to testify to the incident related by the witness, Howard McCann. If the district attorney was discussing that part of the testimony relating to said incident, then it would seem that he was fully justified in using the language attributed to him. In the case of Jones v. State, 214 S. W., 322, this court said: "Touching the argument which it is contended constitutes an implied reference to the failure of the accused to testify, the rule which appears to have been established is that the implication must be a necessary one, and where, as in this case, there is evidence or an absence of evidence other than the testimony of the accused to which the remarks may have reasonably been applied by the jury, the remark is not reversible error. Wooten v. State, 94 S. W., 1060; Pullen v. State, 156 S. W., 935; Taylor v. State, 177 S. W., 82." We are therefore constrained to hold that the bill of exception fails to disclose any error.

By bill of exception No. 8 the appellant complains of the action of the trial court in permitting the introduction of additional testimony after the State and defendant had rested but before the court had read his charge to the jury. The court in his qualification states that both sides indicated they had other testimony to offer, whereupon the case was reopened and the State recalled one of its witnesses for further examination, but that the defendant decided not to offer any further testimony. The action of the trial court is authorized by Art. 643, C. C. P. That it was a matter within the sound discretion of the trial court is obvious and his action in a matter of this kind will not be reviewed unless it appears from the record the court abused his discretion resulting injuriously to appellant. See McClellan v. State, 118 Texas Crim. Rep., 473.

By proper bill of exception appellant also complains of the action of the trial court in overruling his motion for a new trial based on the ground that one of the jurors who was selected to sit on the jury had expressed an opinion as to appellant's guilt and that he would give him plenty. The motion was supported by the affidavit of one person. The State contested said motion, denying the allegations in the motion relating to the juror's expressions, and supported its contest by the affidavit of the juror. No oral testimony was offered by either side. The controverted issue thus raised was decided by the court adversely to appellant. This court will not overturn the finding of the trial court on an issue of fact unless it clearly appears to be wrong. See Stanton v. State, 71 S. W. (2d) 287.

In his motion for a new trial the appellant also complains

that while the officer in charge of the jury was taking the jury from a restaurant back to the jury room one Mitchell Huey informed C. E. Huey, a member of said jury, that his sister-in-law had just died, and that he, Mitchell Huey, would see if the trial judge would permit the jury to go to the funeral in a body. It is contended that said conversation created sympathy for the slain woman. At the hearing of said motion the State introduced E. T. Ray, the officer who was in charge of the jury, who testified as follows: "I do not recall whether we were on our way to or from the cafe. Mitch Huey walked up to me and says, 'Buck, I want you to tell C. E. Huey that his sister-in-law died.' I said, 'What time?', and he said, 'this morning.' C. E. Huey was within two feet of me; we were all in a bunch. That was not in the presence of the court." No other evidence being offered the court overruled the motion for a new trial. A similar question was before this court in the case of Hogan v. State, 74 S. W. (2d) 988, and was decided adversely to appellant's contention. In the case at bar, the woman who had died was the sister-in-law of the juror Huey. There is no showing that he ever heard the conversation between the brother of the juror and the officer, except that he was near enough that he might have heard it, nor is it shown that if he did hear and understand the conversation that it in any way affected him. In the case of Hogan v. State, supra, the brother of one of the jurors died at some place in Ohio, which fact was reported to him, and he was visibly affected by the information. The juror decided it would not be possible for him to attend the funeral and preferred to remain on the jury and proceed with the trial of the case. Under the circumstances, we do not believe the court committed any error in overruling appellant's motion.

By reason of the extreme penalty assessed against the appellant, we have carefully read and considered the facts, the exceptions to the court's main charge, together with appellant's special requested instructions, and have reached the conclusion that the facts proven are sufficient to sustain the verdict of the jury, that the court in his charge adequately applied the law to the facts, and that no error was committed in the court's refusal to submit the requested special charges.

The judgment of the trial court is in all things affirmed.

*Affirmed.*

MORROW, P. J., absent.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In paragraph 10 of the court's charge on insanity, after instructing generally on the subject, is found the following application of the law: "Therefore, if you believe from the evidence, beyond a reasonable doubt, that the defendant did kill Lillian Davis, by shooting her with a gun as charged in the indictment, but if you further believe from a preponderance of the evidence that at the very time he committed the act, the defendant's mind was in an impaired and unsound state to such a degree that for the time being it overwhelmed the reason, conscience and judgment, and that the defendant in killing said Lillian Davis, acted from an uncontrollable and irresistible impulse produced by such impaired and unsound condition of his mind that deprived him of a knowledge of right and wrong, as to the killing, you will find him not guilty, * * *"

Appellant objected to such instruction on the ground that it placed a greater burden on appellant than the law required. From Texas Jurisprudence, Vol. 12, p. 292, Sec. 54, we quote: "The doctrine of irresistible impulse is not recognized in Texas. A person who has an irresistible impulse to commit a crime is insane if he does not know the nature and quality of the act, but is sane if he does know the nature and quality of the act and does know right from wrong and knows the act to be wrong."

The text is supported by, and practically copied from Cannon v. State, 41 Texas Crim. Rep., 467; Kirby v. State, 68 Texas Crim. Rep., 63. Just what did the instruction given mean, other than to advise the jury that if appellant had shown them by a preponderance of the evidence that in killing deceased he acted upon an irresistible impulse resulting from a mind impaired to such an extent that he did not know right from wrong as to such killing, he would not be guilty. While we see no necessity for complicating a charge on insanity with the question of "irresistible impulse," and think under the consistent holdings of our court it should be omitted, yet such an instruction is usually regarded as more favorable to accused than the ordinary and well approved charge. See Kirby v. State (supra), p. 74. If the manner in which paragraph ten of the

instruction is worded, standing alone, might be subject to some criticism, yet when taken in connection with the very next paragraph—number eleven of the instructions—there is no way in which the jury may have been misled to appellant's hurt. It reads: "* * * if his mind at the time of such killing, if any, was in such diseased and unsound condition that for the time being his reason, conscience and judgment were overwhelmed to such an extent that he did not know such act was wrong and criminal, and would subject him to punishment, or that there was thereby created in the mind of the defendant an uncontrollable and irresistible impulse to kill the deceased, which, because of such unsound condition of his mind, he had not sufficient reason, judgment and will power to resist, then it will be your duty to acquit the defendant, * * *"

The latter part of the last quoted charge is certainly more than appellant was entitled to under the law, and is free from the criticism of the burden complained of as to paragraph ten.

On account of the grave penalty inflicted we have again carefully examined the bills presenting the questions which were discussed in our original opinion. Believing they were properly disposed of we regard a further discussion not called for. Counsel for appellant who represented him under appointment of the court are entitled to commendation for the very earnest and able manner in which they have performed their duty in behalf of an unfortunate client, the facts of whose case were not of their making, and whose act in killing deceased seem prompted by jealousy, and without excuse or extenuation.

The motion for rehearing is overruled.

*Overruled.*

### ON APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant asks leave to file a second motion for rehearing, a copy of which accompanies his application. Same has received our careful consideration. It is to be regretted that reference was made, in the charge of the trial court in this case, to irresistible impulse in connection with the charge on insanity,—an instruction which has been held to have no place in a charge on insanity; but appellant is wholly mistaken in thinking our refusal of his motion implies any approval of the attempt to submit the law of irresistible impulse in such connection. What we concluded and think we said was, in substance, that while the court in the latter part of paragraphs

ten and eleven did erroneously refer to and include the doctrine of irresistible impulse, still in other parts of the charge on insanity as contained in paragraph eleven, the court correctly told the jury, first, that they should acquit appellant if they believed upon a preponderance of testimony that from drink, dope or marihuana, or any or all of these, appellant was temporarily insane, and that his mind was so affected as that he did not understand the nature and quality of the act of killing deceased; also that the jury should acquit if they found from a preponderance of the testimony that appellant's mind at the time of the killing was in such diseased and unsound condition as that for the time being his reason, conscience and judgment where overwhelmed to such an extent that he did not know such killing was wrong and criminal, and would subject him to punishment. Having so told the jury in said paragraph, the fact that the court then again in the latter part of said paragraph added the erroneous proposition that the jury might acquit if they found from a preponderance of the evidence that the killing was upon irresistible impulse, and charge as is quoted in our opinion on rehearing, thus giving to the accused more than he was entitled to under the law,—should not be held reversible error. Appellant is mistaken in thinking that the court put upon him the burden of showing by a preponderance of the evidence that he was actuated by an irresistible impulse, before they could acquit. Such is not the case. For two grounds and reasons set out in paragraph eleven, the court told the jury they might acquit, and then, as above stated, added the further ground and reason that they might acquit if they believed he acted upon an irresistible impulse. No better rule exists than that the whole charge must be looked to, and the fact that some part of same is wrong will not call for a reversal unless there be danger that the jury were misled, or the cause of the accused injured by the erroneous charge. This rule is applicable here. We said in our opinion on motion for rehearing that said erroneous part of the charge was wrong, but inasmuch as it in effect gave to the accused an opportunity to be acquitted upon a ground not recognized, the judgment should not be reversed therefor.

We would not feel inclined to hold the verdict against insanity wrong and against the weight of the testimony simply because it was shown that appellant had syphilis, an admitted predisposing cause of mental malady. This was simply to be considered by the jury in connection with the other testimony.

We express our appreciation of the faithful service to appellant of his appointed counsel, who have given to the case

every effort possible, without other pay than comes from the feeling of a conscientious discharge of their duty as officers of the court.

Feeling that the case was correctly disposed of, we must deny the application for leave to file a second motion for rehearing.

*Denied.*