ELMO "BLONDIE" WRIGHT AND CHESTER "CURLEY" WRIGHT V. STATE.

No. 24079. June 9, 1948.
Rehearing Denied October 13, 1948.

Hon. Roy C. Archer, Judge Presiding.

*Smith & Pollard,* of Austin, for appellant.

*Leslie Proctor,* Assistant District Attorney, and *Ernest S. Goens,* State's Attorney, both of Austin, for the State.

BEAUCHAMP, Judge.

The appellants were jointly tried and convicted of murder and were each assessed a penalty of ninety-nine years in the penitentiary.

The indictment contains three counts. Elmo "Blondie"

Wright was found guilty as alleged in the first and second counts. Chester "Curley" Wright was found guilty as alleged in the first and third counts of the indictment. The verdict is clear and understandable under the facts of the case. We have considered the exceptions filed to the court's charge and reached the conclusion that they present no error.

The appellants and a group of friends were having a party, on the occasion of a wedding, at the Elm Grove Lodge, a night club on the Bee Cave Road near Austin. During the evening the deceased, with some of his friends, entered the lodge and took a table some distance away from the party with whom the appellants were associated. The story of the murder is very brief, yet the evidence is quite conflicting. From the State's viewpoint, based on the testimony of its witnesses, which the jury evidently believed, the murder was wanton and cruel. One of the defendants informed Barrier, the deceased, that he had left his truck with the engine running and the lights on. Soon after this the deceased went to the door and was met by "Blondie" Wright who struck him on the left side of the head with a rock. The victim fell to the floor. "Blondie" Wright then stepped back and told his brother "Curley" to get the gun, apparently from Barrier. "Curley" got the gun and beat him on the head, then stomped him with shoes on his feet, with the result that he died a few days thereafter. The wounds described were cuts and wounds on his face and head, a wound between the eyes; one over the left eye; one in the cheek; the upper lip; another in the roof of his mouth; some of the teeth were knocked loose, and there was a fracture of the skull and of several bones in his face. According to the doctor's testimony, he died from an injury to the brain as a result of the above fractures. It is further testified that the appellants, together with some others, hit the deceased with a piece of 2 x 4 scantling.

The case is presented on appeal with sixteen bills of exception. One complains that there is insufficient evidence to support the conviction of "Curley" Wright as a principal. The foregoing discussion of the State's evidence sufficiently supports the State's contention that the evidence was sufficient for the jury to find him guilty under the court's charge.

By Bill of Exception No. 16, appellant complains of the argument of the district attorney in closing for the prosecution. His language is as follows:

"I think the people of Texas have a right under this testimony to expect you men,—not by your acts, gentlemen, but by

their own conduct and their own acts they brought themselves into this court-room, and the people of this country have a right to except you to stop such and to exterminate them from society."

An analysis of the argument does not reveal that any new matter was brought into it or that the attorney made any statement of fact for their consideration. When the objection was lodged to it the learned trial judge admonished the jury that they were the judges of the facts proved, which they were to take from the evidence given from the witness stand. This admonition was appropriate even though the argument is not to be considered as improper. While it is not reprehensible, it does not direct the jury to right thinking. The court did. The jury need not be concerned about what the people think, or what they have a right to expect. Their sworn duty is to decide a case according to the evidence, under the charge of the court. A more appropriate statement could hardly be made than that which the judge gave at the time. His thoughtfulness in doing so is commended.

The argument complained of in Bill of Exception No. 14 was based upon the facts in evidence.

Bill of Exception No. 15 complains that the juror Alonzo Cass was not a fair and impartial juryman for the reason that he had a preconceived opinion as to the guilt of the defendants and had so expressed it. If such be the fact and it was unknown to the defendants the motion for a new trial should have been granted. Appellants presented witnesses who so testified, but their statements were contradicted by the juror. The trial court heard the evidence and passed on the question of fact which precludes further consideration by this Court.

As we view the appeal, reliance is had chiefly for reversal on the action of the court in the manner of directing the selection of talesmen after the special venire had been exhausted. Appellant's brief says that the law on the subject is confusing. We do not so view the law, even though many decisions on the subject may confuse us unless we take into account the various amendments to the statute regulating the selection and summoning of jurors, both in civil and criminal cases. We have carefully considered the exhaustive argument found in appellant's brief and conclude that it will not be necessary to discuss the various questions raised. If we should do so it is not hoped that we would make it sufficiently clear, under all of the circumstances, to eliminate entirely all confusion on the subject. The

court followed Article 596 of the Code of Criminal Procedure, which is applicable here. A special venire had been regularly ordered and only a few jurors had been selected from it, for the trial of the case, before it was exhausted. The court then, acting under said article, directed the sheriff to summon talesmen. He administered to him the oath and gave the statutory directions. The manner of summoning these jurors is not in question. When these talesmen were exhausted others were ordered. The list was exhausted and still others ordered by the same manner before the jury was completed.

Summarizing the various complaints made, it is that the court should first have exhausted a list of jurors which had been drawn from the wheel. His failure to do so is the ground of several bills of exception complaining of the action and then complaining of each juror whom they selected from the several groups of talesmen.

We have given careful consideration to the very helpful brief on the subject and it is our conclusion, as above stated, that nothing further will be necessary than to say that the court properly followed the statute.

It may not be amiss at this time, however, to say that Tuley v. State, 204 S. W. (2d) 611, is not in point. In that case the trial judge, in directing the calling of a special venire for the trial of the case, took a list of 71 qualified veniremen which had been selected by a commission, and directed the sheriff to summon 79 additional men whom the sheriff should select, so that the 150 men would constitute the special venire. Such order was directly in conflict with the statute and this Court so held. They were not talesmen, as were those summoned in the case now before us. The opinion clearly makes the distinction between that case and the one now before us.

Finding no reversible error, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellants again contend that we erred in our original opinion herein when we held that there was no error evidenced as shown in Bill No. 16 relating to the argument of the special prosecutor in which he is claimed to have said in his argument to the jury, among other things:

"* * * and the people of this country have a right to expect you to stop such and to exterminate them from society."

It is insisted that such argument was inflammatory, vicious and malicious and conveyed to the jury the idea that the people of Texas, and of Travis County, knew the facts in the case and thought that appellants should receive the extreme penalty, and was a request to the jury to do what the people desired them to do. We think the above construction placed upon such remarks is a strained one and hardly deducible from the statement itself. It seems that the special prosecutor's idea was that "I think the people of Texas have a right under this testimony to expect you men, * * * and the people of this country have a right to expect you to stop such and to exterminate them from society."

Surely the speaker had a right to argue the testimony, and its expected effect upon the minds of the jury. Certainly he had a right to argue the infliction of a penalty commensurate with his idea of the proof, and surely, if a jury believed certain testimony, society at large or "of this country" had a right to expect the jury to perform its duty, whatever such duty might have been. The object of punishment is to suppress crime and reform the offender. Art. 2, P. C. These men were on trial for a serious crime and all people had a right to expect this jury to render a fair and just verdict whatsoever they might find such to be. We see no error in said bill.

The further point is again raised relative to the purported prejudice of the juror Cass, who they alleged to be an unfair and partial juror in that he had, prior to the time he was taken on the jury, expressed an opinion and a desire to have the appellants punished. On the hearing of the motion for a new trial, appellants offered testimony of two witnesses who said that a statement was made in their presence by juror Cass as follows:

"If I was on the jury, I would send them to the electric chair on their past record."

The juror Cass testified on the hearing of appellants' motion for a new trial that he did not make any expression as to the guilt or innocence of Chester "Curley" Wright or Elmer "Blondie" Wright in this cause; that he didn't think he knew their names; didn't know either of them; did not ever make a statement at any time prior to the time he was called as a prospective juror that if he were on the jury that he would

send them to the electric chair on account of their past record. Thus, this contention became a fact issue for the consideration and determination of the trial judge; and, unless it should affirmatively appear that the trial judge abused his discretion, his action would not be disturbed by this court on appeal. In support of this proposition we cite Stanton v. State, 126 Tex. Cr. R. 313, 71 S. W. (2d) 287; Friedsam v. State, 134 Tex. Cr. R. 515, 116 S. W. (2d) 1081; and authorities therein cited. See also Autry v. State, 143 Tex. Cr. R. 252; 157 S. W. (2d) 924. In the Friedsam case, supra, we said:

"The trial judge saw the witnesses, heard them testify in this matter, and overruled the motion for a new trial. In so doing we think he was acting within his discretion. We quote Branch's Ann. P. C., sec. 565, p. 288, as follows: 'When it is sought to show on the hearing of the motion for new trial that a juror before the trial had expressed an opinion of defendant's guilt or had made statements which showed a prejudice against defendant, the decision of the trial court on that issue will be sustained by the appellate court unless clearly wrong if the evidence bearing thereon was conflicting and was sufficient, if believed, to justify the action of the trial judge,' citing a long line of cases."

See also Meadors v. State, 101 Tex. Cr. R. 336, 275 S. W. 829; McKenzie v. State, 11 S. W. (2d) 172; Bracken v. State, 121 Tex. Cr. R. 278, 51 S. W. (2d) 379.

Mr. Alonzo Cass, the juror in question, testified on the hearing of the motion for a new trial herein, among other things, as follows:

"Prior to my being called as a prospective juror in this case, I did not make an expression as to the guilt or innocence of Chester "Curley" Wright or Elmo "Blondie" Wright in this cause; I don't think I knew their names. I did not know either of the Wright boys before this time. I did not ever make the statement at any time prior to the time I was called here as a prospective juror that if I were on the jury that I would send them to the electric chair on account of their past record. I didn't know them. I wasn't in Austin until the past two years."

Evidently the trial court believed the statement of Mr. Cass, and unless we are convinced that he was clearly wrong herein in so doing, it is our duty to uphold his judgment relative to such matter. We, therefore, see no error therein.

Thus believing, the motion for a rehearing will be overruled.