Lawrence Earl COOK, Appellant,

v.

The STATE of Texas, Appellee.

No. 0424–92.

Court of Criminal Appeals of Texas,
En Banc.

April 13, 1994.

Rehearing Denied June 1, 1994.

Fred Tinsley, Dallas, for appellant.

John Vance, Dist. Atty., Teresa Tolle, Asst. Dist. Atty., Dallas, and Robert Huttash, State's Atty. and Jeffrey L. Van Horn, Asst. State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

BAIRD, Judge.

Appellant was charged with intentional murder pursuant to Tex.Penal Code Ann. § 19.02(a)(1) and was convicted by a jury of the lesser included offense of voluntary manslaughter. Tex.Penal Code Ann. § 19.04. The jury assessed punishment at twenty years confinement and a fine of $5,000. Tex.Penal Code Ann. § 12.33. The Court of Appeals affirmed. *Cook v. State*, 827 S.W.2d 426 (Tex.App.—Dallas 1992). We granted appellant's petition for discretionary review to determine whether the Court of Appeals erred in holding the trial judge correctly refused appellant's request to limit the definitions of the applicable culpable mental states to the result of appellant's conduct.[1] We will reverse and remand.

---

1. Specifically, appellant's grounds for review state:

Ground for Review One:
The Court of Appeals erred in holding that the trial court did not err in refusing the appellant's requested instruction limiting the application portion of the jury charge to the result of appellant's conduct.

Ground for Review Two:
The Court of Appeals erred in holding that the trial court did not err in refusing to limit the definition of the applicable culpable mental state to the result of appellant's conduct.

## I.

The decedent and two co-workers were searching for the decedent's wife, when they saw appellant talking to the wife. The decedent confronted appellant and ordered appellant to leave. Appellant and decedent began to argue and shove each other. During the altercation, appellant stabbed the decedent in the chest with a knife. After stabbing the decedent, appellant said: "I didn't mean to hurt you, man." The decedent died as a result of the stab wound.

Appellant was charged with murder under Tex.Penal Code Ann. § 19.02(a)(1). The indictment alleged appellant

> ... knowingly and intentionally cause[d] the death of [the decedent], an individual, by stabbing [the decedent] with a knife a deadly weapon.

At the close of trial, appellant objected to portions of the definitions and application portions in the jury charge and requested the following limitations on the definitions of intentionally and knowingly:

> MR. TINSLEY: The objection that I now make on the record goes to the definition of knowingly and intentionally, which happen to be defined for the jury in the abstract in the Court's charge. And we object to the Court's charge defining knowingly and intentionally as it reads under 6.03(a) and (b) of the code—of the Penal Code.
>
> And the reason we object is that it is our theory that the crime of murder is a result offense, rather than a conduct offense, and we object because the Court's charge does not limit the definition of both culpable mental states to the result of the offense only.
>
> THE COURT: I'm going to overrule that requested charge.
>
> MR. TINSLEY: Note my exception.

The trial judge then submitted to the jury the definitions of "intentionally" and "knowingly" as defined at Tex.Penal Code Ann. § 6.03:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when

it is his conscious objective or desire to engage in the conduct or cause the result.

> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The application portions of the jury charge provided:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 27th day of July, 1990 in Dallas County, Texas, the defendant, LAWRENCE EARL COOK, *did intentionally or knowingly cause the death* of [the decedent], an individual, by stabbing [the decedent] with a knife, a deadly weapon, as alleged in the indictment, and that the defendant, in so acting was not acting under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of murder.
>
> Unless you find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of murder.
>
> If you find from the evidence beyond a reasonable doubt that on or about the 27th day of July, 1990 in Dallas County, Texas, the defendant, LAWRENCE EARL COOK, *did intentionally or knowingly cause the death* of [the decedent], an individual, by stabbing [the decedent] with a knife, a deadly weapon, as alleged in the indictment, but you further find from all the facts and circumstances in the case that the defendant, in killing [the decedent], if he did, acted under the immediate influence of a sudden passion arising from an adequate cause, or if you have a reasonable doubt as to whether he so acted under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of voluntary manslaughter.
>
> Unless you so find beyond a reasonable doubt that the defendant is guilty of volun-

tary manslaughter under the instructions given you, or if you have a reasonable doubt thereof, you will acquit the defendant of voluntary manslaughter.[2]

The jury returned a verdict of guilty of voluntary manslaughter and appellant appealed. The Court of Appeals affirmed, holding there was no error in the jury charge because the offense of intentional murder required a finding of both an intent to engage in the conduct and an intent to cause the result. The Court of Appeals found that it would have been error to limit the abstract definitions of the culpable mental states as appellant requested. *Cook,* 827 S.W.2d at 430.

## II.

This case involves the most basic and fundamental concept of criminal law, that in order to constitute a crime, the act or *actus reus* must be accompanied by a criminal mind or *mens rea.* Perhaps this concept was best explained by the United States Supreme Court many years ago in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil ...
>
> Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will." ...
>
> Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapprov-

al of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation ....

*Id.,* 342 U.S. at 250–252, 72 S.Ct. at 243–244.

Our Legislature recognized this fundamental concept by enacting four separate culpable mental states. Tex.Penal Code Ann. § 6.03. This Court has further recognized that the scope of those culpable mental states is limited by the type of offense. In *McQueen v. State,* 781 S.W.2d 600 (Tex.Cr. App.1989), we stated that our analysis of criminal conduct varies according to the "conduct elements" of the offense. We stated:

> ... V.T.C.A., Penal Code, Sec. 6.03 delineates three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct ... Any offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential "conduct elements" to which a culpable mental state must apply. See Sec. 6.03. For example, where specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself ... On the other hand, *unspecified conduct that is criminalist because of its result requires culpability as to that result* ... Likewise, where otherwise innocent behavior becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances ....

*McQueen,* 781 S.W.2d at 603 (citations omitted). *See also, Lugo–Lugo v. State,* 650 S.W.2d 72, 86–87 (Tex.Cr.App.1983) (Clinton, J., concurring).

In *Beggs v. State,* 597 S.W.2d 375 (Tex.Cr. App.1980), we first addressed the issue of tailoring the Court's charge in relation to a "result of conduct" offense. Beggs was charged with injury to a child after placing her granddaughter in scalding bathwater.

---

**2.** All emphasis is supplied unless otherwise indi-  cated.

At trial, Beggs contended she did not know the bathwater was hot enough to cause injury and believed she was giving the child a normal bath. *Beggs*, 597 S.W.2d at 376. The trial judge denied Beggs' requested instruction applying the law of mistake of fact to the specific facts of the case. Instead, the trial judge provided a general instruction on mistake of fact. *Beggs*, at 378–379. On appeal, the State argued that Beggs was not entitled to a specific instruction on mistake of fact going to her intent to cause injury because the injury to a child statute contained language directed towards engaging in conduct. *Beggs*, at 376. We held that the "engage in conduct" language of the injury to a child statute was, in fact, "vestigial" language and that the statute's actual focus was on the result of a defendant's conduct. *Beggs*, at 377. We then held the trial judge's failure to apply the specific facts of the defendant's mental state to the charge, "over the appellant's objection and in the face of a properly requested charge, was reversible error." *Beggs*, at 380.

In *Alvarado v. State*, 704 S.W.2d 36 (Tex.Cr.App.1985), another injury to a child case, the trial judge refused the defendant's request to limit the definitions of the culpable mental states to focus on the result of the conduct. Instead, the trial judge charged the jury with the full definitions under § 6.03(a) and (b). Relying upon *Beggs*, we observed that:

> [T]he injury to a child statute, like homicide and other assaultive proscriptions, does not specify the "nature of conduct." Clearly then, the nature of conduct in these offenses is inconsequential (so long as it includes a voluntary act) to commission of the crimes. What matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature had specified.

*Alvarado*, 704 S.W.2d at 39 (emphasis in original). We then held the trial judge's failure to limit the definitions of the culpable mental states to the result of the conduct constituted reversible error. *Id.*, at 40.

In *Kelly v. State*, 748 S.W.2d 236 (Tex.Cr.App.1988), we applied the holdings of *Beggs* and *Alvarado* in the context of an injury to the elderly offense. At trial, Kelly objected to the "failure of the Court to include a specific charge on the intent required" and requested a special instruction emphasizing an intent to cause the injuries. *Kelly*, 748 S.W.2d at 238, n. 2. Nevertheless, the trial judge charged the jury with the full statutory definitions of intentionally and knowingly. *Id.*, at 238. After reviewing *Beggs* and *Alvarado*, Judge W.C. Davis concluded:

> ... In sum, as injury to an elderly individual is a result offense, the culpable mental state must apply to the result of appellant's conduct, or in the case at bar the serious bodily injury inflicted on the elderly man.

*Kelly*, 748 S.W.2d at 239. We reversed and remanded for a harm analysis under *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App. 1984), and *Arline v. State*, 721 S.W.2d 348 (Tex.Cr.App.1986).

Finally, in *Haggins v. State*, 785 S.W.2d 827 (Tex.Cr.App.1990), another injury to a child case, the defendant requested that the definitions of the culpable mental states in the jury charge be limited to the "result of conduct." We held the trial judge erred in overruling Haggins' request and remanded for a harm analysis under *Almanza*. *Haggins*, 785 S.W.2d at 828.

## III.

In *Kinnamon v. State*, 791 S.W.2d 84 (Tex. Cr.App.1990), a capital murder case, while ostensibly retaining our holding in *Alvarado*, we dramatically veered from the *Alvarado* line of cases. Kinnamon objected to the trial judge's definition of "intentional" which tracked the statutory definition in § 6.03(a). The trial judge overruled the objection. While acknowledging that capital murder was a "result of conduct" offense, we further stated that in a prosecution for "result of conduct" offenses, "not only must an accused be found to have intended to engage in the act that caused the death, he also must have specifically intended that death result from that conduct." *Kinnamon*, 791 S.W.2d at 88–89 (*citing Morrow v. State*, 753 S.W.2d 372 (Tex.Cr.App.1988)). *See also, Martinez v. State*, 763 S.W.2d 413, 419 (Tex.Cr.App. 1988).

The *Kinnamon* Court then created an exception to *Alvarado* by requiring that "the definition complained of ... be examined in the context in which the defined term appears, and not limited to portions of a charge standing alone." *Kinnamon,* 791 S.W.2d at 87 (quoting *Selvage v. State,* 680 S.W.2d 17 (Tex.Cr.App.1984), and *Inman v. State,* 650 S.W.2d 417 (Tex.Cr.App.1983)). We then held there was *no error* because, in reading the charge as a whole, the "application paragraphs of the charge restricted the definition of 'intentional' to its factual context: that the appellant 'intentionally caused the death of [the decedent] by shooting [the decedent] with a gun.' " *Kinnamon,* 791 S.W.2d at 89. *See also, Cantu v. State,* 842 S.W.2d 667, 690–691 (Tex.Cr.App.1992); *Holley v. State,* 766 S.W.2d 254, 256 (1989).

It is clear that our analysis in *Kinnamon* with regard to "result of conduct" offenses is inconsistent with *Alvarado* where we held:

> ... [T]he injury to a child statute, *like homicide* and other assaultive proscriptions, does not specify the "nature of conduct." Clearly then, *the "nature of conduct" in these offenses is inconsequential (so long as it includes a voluntary act) to commission of the crimes.* What matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified.

*Alvarado,* 704 S.W.2d at 39.

A plurality of this Court expressly recognized that *Kinnamon* was wrongly decided in *Turner v. State,* 805 S.W.2d 423, 432 (Tex.Cr. App.1991) (Miller, J., concurring op. on reh'g). In *Turner,* another capital murder case, the defendant failed to object to the jury charge which tracked the statutory defi-

nition of "intentional." On original submission, relying on *Kinnamon,* we concluded the application portion of the jury charge limited the definition of intentional to the factual context of the case. *Turner,* 805 S.W.2d at 430–431. However, Turner challenged that conclusion on rehearing. While rehearing was ultimately denied, Judge Miller and three other judges disavowed *Kinnamon:*

> [A]ppellant is correct when he states *Kinnamon* ... was wrongly decided in light of *Alvarado* ... *Kelly* ... and *Haggins* ... However, there was no objection and there was some limiting instruction in the court's charge (e.g. intentionally caused the death). Thus, there was no egregious harm under *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1984) (Opinion on State's Motion for Rehearing) and the correct result was reached....

*Turner,* 805 S.W.2d at 432 (Miller, J., concurring op. on reh'g, McCormick, P.J., Campbell and White, JJ., join).

The Austin Court of Appeals, recognizing the conflict between *Kinnamon* and the *Alvarado* line of cases, followed the plurality holding of *Turner. Fuller v. State,* 819 S.W.2d 254, 256 (Tex.App.—Austin 1991, pet. ref'd). In *Fuller* Court held:

> ... In light of *Turner,* we do not think the Court of Criminal Appeals will follow what could be interpreted as a "no error" holding in *Kinnamon.* Rather, we conclude that the correct analysis is that the inclusion of the "engage in conduct" language in the definitional portion of a jury charge is in fact error where the offense charged is a result offense.

*Fuller,* 819 S.W.2d at 256. *But see, Cantu,* supra.[3]

---

3. In *Cantu,* the defendant was convicted of capital murder, namely murder committed in the course of aggravated sexual assault. On appeal, Cantu contended that because the application portion of the jury charge contained both "engage in conduct" language and "result of conduct" language, the charge allowed the jury to convict on an intent other than an intent to cause the death of the decedent. *Id.,* 842 S.W.2d at 690–691. We held that the charge, read as a whole limited the defendant's culpable mental state to the "result of conduct." *Id.,* at 691 and 18.

Despite its seeming reliance upon *Kinnamon, Cantu* is consistent with the plurality opinion of *Turner* bearing in mind that while capital murder is a "result of conduct" offense, *Turner,* 805 S.W.2d at 430, in certain circumstances it is appropriate to instruct the jury on other "conduct elements." This is because, capital murder often requires a combination of "conduct elements" to "form the overall behavior which the Legislature has intended to criminalize." *McQueen,* 781 S.W.2d at 603. For example, § 19.03(a)(1) requires not just an intent to cause a particular result, e.g., the death of a peace officer or fireman, but also requires that the

## IV.

With the foregoing in mind, we turn to appellant's grounds for review wherein he contends the Court of Appeals erred in holding the trial judge correctly refused to limit the definitions of the applicable culpable mental states to the result of appellant's conduct.

■ We have long held that intentional murder is a "result of conduct" offense. *Martinez v. State*, 763 S.W.2d 413, 419 (Tex. Cr.App.1988), and *Lugo–Lugo*, 650 S.W.2d at 80, 88. As a "result of conduct" offense "[w]hat matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified." *Alvarado*, 704 S.W.2d at 39 (emphasis in original). Any other language relating to conduct is inconsequential. *Id.* As the San Antonio Court of Appeals correctly stated in *Wallace v. State*, 763 S.W.2d 628 (Tex.App.—San Antonio 1989):

> Murder is an offense which requires that the culpable mental state accompany the result of the conduct, rather than the nature of the conduct. A charge which defines "intentionally" or "knowingly" as they relate to the nature of the conduct as well as the result of the conduct is error.

*Id.*, 763 S.W.2d at 629 (citing *Alvarado*, 704 S.W.2d at 37).

The Court of Appeals, relying on *Kinnamon*, held that "under § 19.02(a)(1), the culpable mental states of knowingly or intentionally must be applied to *both* the conduct and the result of the conduct." *Cook*, 827 S.W.2d at 430 (emphasis in original). The Court of Appeals concluded, "It would therefore be error to limit the abstract definitions of the culpable mental states to the result alone, as appellant requested." *Id.* The State Prosecuting Attorney argues along a similar line that the culpable mental states are not mutually exclusive and may co-exist

with regard to the same proscribed conduct. The State contends that conceptually, it is impossible for a party to intend to cause a result without also intending to engage in the conduct bringing about the result. Consequently, the State Prosecuting Attorney concludes, there was no error in including language regarding the nature of appellant's conduct in the court's charge.

■ Both the Court of Appeals and the State Prosecuting Attorney are in error. Engaging in conduct is *not* an element in a "result of conduct" offense and is not relevant unless the voluntariness of the act is an issue. As we explained in *Alvarado*:

> The significance of [§ 6.01] in the context of Chapter 6 is that it distinguishes culpable mental states from the requirement of voluntary conduct, a distinction which was often blurred or lost under the 1925 Penal Code. [citation omitted] ... [Moreover] it superimposes an "engage in conduct" requirement onto *every* offense; *this, however, is relevant to the voluntariness of acts or omissions, and not the subject of a culpable mental state....*

*Id.* 704 S.W.2d at 38. *Compare, Morales v. State*, 853 S.W.2d 583, 584 (Tex.Cr.App.1993). Consequently, in a prosecution for a "result of conduct" offense, an intent to engage in conduct is not an explicit element to be proven.

The Court of Appeals' misattribution of an intent to engage in conduct as an element of intentional murder appears to stem from dicta in *Martinez*, 763 S.W.2d 413. In *Martinez*, this Court erroneously relied upon Judge Clinton's concurring opinion in *Lugo–Lugo* to require an intent to engage in conduct as an explicit element of intentional murder. However, *Lugo–Lugo* dealt with § 19.02(a)(2) rather than intentional murder

---

defendant have knowledge of the circumstances surrounding the conduct, e.g., that the defendant also know the complainant is a peace officer or a fireman. *See*, Penal Code § 19.03(a)(1). In addition, § 19.03(a)(2) requires not just the intent to cause the death of an individual but also requires the defendant to have the culpable mental state necessary to satisfy the "conduct elements" of the underlying offense. *See, Upton v.*

State, 853 S.W.2d 548, 552 (Tex.Cr.App.1993), *Davis v. State*, 782 S.W.2d 211, 221, n. 4 (Tex.Cr. App.1989), *White v. State*, 779 S.W.2d 809, 814–815 (Tex.Cr.App.1989), cert. denied 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990), *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex.Cr.App. 1986), *and Ellis v. State*, 726 S.W.2d 39, 40 (Tex.Cr.App.1986).

under § 19.02(a)(1). *Id.,* 650 S.W.2d at 88.[4] Therefore, *Lugo–Lugo* does *not* support the proposition that intent to *engage in conduct* is an element of intentional murder under § 19.02(a)(1).

Moreover, the Court of Appeals failed to note that we held, albeit in a plurality, that *Kinnamon* was wrongly decided. *Turner,* 805 S.W.2d 423, 432 (Miller, J., concurring op. on reh'g). Capital murder is obviously a "result of conduct" offense. *Alvarado,* 704 S.W.2d 36. Consequently, the Court's sudden announcement in *Kinnamon* that there was no error in refusing to limit the definitions of the culpable mental states as long as the application portions restricted the culpable mental states to their factual context was quite inexplicable.

Finally, the State contends that murder prosecutions are unique among "result of conduct" offenses and are governed by *Kinnamon, supra, Turner, supra,* and *Hernandez v. State,* 819 S.W.2d 806 (Tex.Cr.App.

1991). Such reasoning, however, ignores our holdings to the contrary in *Turner,* 805 S.W.2d at 432 (Miller, J. concurring), and *Alvarado,* 704 S.W.2d at 39.[5]

## V.

Intentional murder under § 19.02(a)(1) is a "result of conduct" offense, therefore, the trial judge erred in not limiting the culpable mental states to the result of appellant's conduct. *Alvarado, supra.* We expressly overrule *Kinnamon* to the extent that it holds to the contrary. It is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense. *McQueen, supra.* However, finding error in the jury charge begins, rather than ends, the appellate court's inquiry. The next step is to make an evidentiary review, as well as a review of the record as a whole which may illuminate the actual, not just

**4.** In his concurrence, Judge Clinton explained:
Anytime the result intended by the actor is unnecessary to commission of the offense charged, or is different from the actual result, it is an "accompanying mental state" which provides the requisite culpability to the "conduct" or "nature of the conduct," and we so hold. Another way to view it is that the "conduct" is the means the actor employs to effect the "result" he intends. Conceptualized in this way, the "conduct" and the "accompanying mental state" are, literally, inseparable.
Thus, in this case, the "intent to cause serious bodily injury" applies to the "act" committed: the person acts with intent with respect to the nature of his conduct because it is his conscious objective or desire to engage in conduct that will result in serious bodily injury. See § 6.03(a). Restated, he intends to cause serious bodily injury through his commission of the culpable "act."
*Lugo–Lugo,* 650 S.W.2d at 88.

**5.** *Hernandez* is easily distinguishable from both *Turner* and *Kinnamon.* In *Hernandez,* another capital murder case, the defendant asked the trial judge to limit the definition of "intentionally" to the "result of conduct." The trial judge refused and instead charged the jury with the full definition of "intentional" under § 6.03(a). Hernandez challenged his conviction based on our holding in *Alvarado.* In upholding Hernandez's conviction, we distinguished his particular case:
We find that it was not error to submit the penal code definition of intentional *due to the wording of the indictment and the wording of the application portion of the charge, which*

*tracked the language of the indictment. The indictment in this cause required a finding of a culpable mental state to both "cause the result" (the death of [decedent]) AND "engage in the conduct" (shooting [decedent] with a gun). Thus ... the State was required to prove both intentional ... conduct of the accused and intentional ... result of the conduct.* Therefore, the penal code definition of intentional, which included the complained of "engage in conduct" language, assisted the jury in its determination of guilt. Accordingly, since both a finding of a culpable mental state to engage in the conduct and a culpable mental state to cause the result were required by the wording of the indictment, the court did not err in instructing on both.
*Hernandez,* 819 S.W.2d at 811–812.
It is significant that we relied upon neither *Kinnamon* or *Turner* to reach our decision. Instead, *Hernandez* may be justified with regard to *Alvarado* on the basis that "the trial court's charge to the jury generally should correspond to the allegations in the indictment." *Richardson v. State,* 744 S.W.2d 65, 84 (Tex.Cr.App.1987), *vacated on other grounds,* 492 U.S. 914, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1987). Because the elements of an offense which the State must prove are those set forth in the charge given to the jury, *Rabanni v. State,* 847 S.W.2d 555, 558 (Tex.Cr.App.1992) (citing *Rivera v. State,* 808 S.W.2d 80, 91 (Tex.Cr.App.1991)), the wording of the indictment required the State to prove both that the defendant had the intent to engage in the conduct and the intent to cause the result. Conse-

theoretical harm to appellant. *Kelly,* 748 S.W.2d at 239; *Almanza,* 686 S.W.2d at 174. *See also, Haggins,* 785 S.W.2d at 828.[6]

Accordingly, the judgment of the Court of Appeals is reversed and this case is remanded to that Court for further proceedings consistent with this opinion.

MALONEY, Judge, concurring.

I join the majority's opinion, but write separately to point out the complications that can be expected when the majority's opinion is applied to an offense that contains more than one "conduct element", as that term is used in the majority's opinion.

Understanding "conduct elements" makes sense only in the context of an "element analysis" rather than an "offense analysis". Pursuant to an element based analysis, "a single offense definition may require a differ-

ent culpable state[[1]] of mind for each objective element[[2]] of the offense." Paul H. Robinson & Jane A. Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond,* 35 Stan.L.Rev. 681, 683 (April 1983) (footnotes deleted). By contrast, pursuant to an offense based analysis the entire offense is characterized by a single culpable mental state.[3] *Id.* The initial drafters of the Penal Code attempted to adopt the "element analysis" characteristic of the Model Penal Code. However, in removing two provisions key to the application of this analysis prior to the passage of the Code in 1974, the Legislature in effect tossed the Code into the air and allowed it to crash to the ground splintered and disjointed, leaving it to the courts to determine whether an element analysis or an offense analysis should be employed in its application.[4] Judge Clinton's

quently, the State's reliance upon *Hernandez* to support *Kinnamon* is misplaced.

**6.** As a part of this harm analysis, the court may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge. *See Turner,* 805 S.W.2d at 432 (Miller, J., concurring op. on reh'g).

**1.** The phrase "culpable mental state" refers to any one of the four degrees of culpability identified by the Penal Code as including intentional, knowing, reckless and criminal negligence. Tex.Penal Code Ann. § 6.02(d). As noted by the majority, culpable mental state is further characterized by a "conduct element":

V.T.C.A., Penal Code, Sec. 6.03 delineates three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct." *Cook,* at 487 (quoting *McQueen v. State,* 781 S.W.2d 600, 603 (Tex.Crim.App.1989)).

**2.** "The term 'objective element' refers to a conduct, result, or circumstance element of an offense." Paul H. Robinson & Jane A. Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond,* 35 Stan.L.Rev. 681, 683 n. 9 (April 1983). This Court has referred to these objective elements as "conduct elements." *McQueen v. State,* 781 S.W.2d 600, 603 (Tex.Crim.App.1989) (Penal Code delineates three conduct elements).

**3.** In a traditional "offense analysis", offenses were referred to simply in terms of intentional offenses, reckless offenses and negligent offenses. Paul H. Robinson & Jane A. Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond,* 35 Stan.L.Rev. at 683.

In some respects, we apply a form of an "offense analysis" when an offense contains only one conduct element. For instance, we refer to some offenses as being "result of conduct" offenses when that is the only conduct element contained in the offense. *See Cook,* at 489 (intentional murder is "result of conduct" offense) (citing *Martinez v. State,* 763 S.W.2d 413, 419 (Tex. Crim.App.1988)); *see also Alvarado v. State,* 704 S.W.2d 36, 39 (Tex.Crim.App.1985) (injury to a child is a "nature of conduct" crime).

**4.** The Model Penal Code utilizes an element analysis. *See generally* Robinson & Grall, *Element Analysis,* 35 Stan.L.Rev. 681; *see also* Model Penal Code § 2.02(1) (Proposed Official Draft 1962, American Law Institute) (culpable mental state applies to "each material element of the offense"). That the initial drafters of the 1974 Texas Penal Code attempted to integrate the element analysis is evidenced in the draft proposed to the Legislature by the State Bar Committee which provided that

Except as provided in Subsection (b) of this section, a person does not commit an offense unless he acts intentionally, knowingly, recklessly, or with criminal negligence, as the definition of the offense requires, *with respect to each element of the offense.*

*A Proposed Revision to the Texas Penal Code,* State Bar Committee on Revision of the Penal Code, § 6.04(a) (Final Draft 1970). By contrast, the Code as passed in 1974 provided (and continues to provide) as follows:

Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

Tex.Penal Code Ann. § 6.02(a). The underlined portion of the proposed provision, making men-

concurring opinion in *Lugo–Lugo* attempted to pick up the pieces, and we have since applied an "element analysis" with some success in an effort to provide some precision, clarity and rationality. *See generally Lugo–Lugo v. State*, 650 S.W.2d 72, 89 (Tex.Crim. App.1983) (Clinton, J., joined by 3 other judges, concurring); *see also McQueen v. State*, 781 S.W.2d 600, 602–06 (Tex.Crim.App. 1989) (offense of unauthorized use of motor vehicle encompasses two conduct elements to which mental state applies); *Gardner v. State*, 780 S.W.2d 259, 261–63 (Tex.Crim.App. 1989) (state of mind requirement in unauthorized use of motor vehicle offense goes to both conduct and circumstances surrounding conduct, citing *Lugo–Lugo*, Clinton, J., concurring; *Lane v. State*, 763 S.W.2d 785, 787 (Tex.Crim.App.1989) (question in robbery case is whether defendant acted with knowledge or intent that bodily injury would be the result of his conduct, citing *Lugo–Lugo*, Clinton, J., concurring).

While an "element analysis" is the most sensical way of approaching the issue, we must be cognizant of attendant problems that can be expected to arise in the wake of the majority's opinion. The majority holds, as did the Court in *Alvarado*, that in the case of a "result of conduct offense", the definition of "intentionally and knowingly" as contained in the charge must be limited to the result of

conduct language. The problem is that not all offenses are characterized by a single conduct element. As we have recognized previously, a single offense can contain any one *or more* of the conduct elements "which alone or in combination form the overall behavior which the Legislature intended to criminalize." *McQueen v. State*, 781 S.W.2d 600, 603 (Tex.Crim.App.1989). This logically leads one to wonder how the majority's opinion will be applied to offenses that involve more than one conduct element.[5]

The majority touches on this briefly in referring to the capital murder context. *See Cook*, at 489 n. 3. Capital murder is usually a combination of offenses (e.g., intentional murder plus robbery), or at least a combination of one offense plus some additional aggravating conduct (e.g., intentional murder plus knowledge that the victim is a peace officer). Thus, although we have stated that murder is a result of conduct offense, that conclusion may be overly broad in a capital murder context. While intentional murder is a result of conduct offense, the additional conduct or underlying offense which renders an intentional murder a capital murder may not itself be a result of conduct offense. Therefore, it may be inadequate to include in the jury charge only the result of conduct definition of culpable mental state, when the

---

tal state applicable to each element of the offense, does not appear in the current code. The comments to the proposed code also clearly indicated that an element analysis was intended. *Id.* at § 6.05 Committee Comment.

Both the 1974 Code as passed and the Committee's draft include provisions addressing the situation where the definition of an offense does not prescribe a culpable mental state. Tex.Penal Code Ann. § 6.02(b), (c); *A Proposed Revision to the Texas Penal Code*, State Bar Committee on Revision of the Penal Code, § 6.04(b), (c) (Final Draft 1970). The proposed draft also contained a provision addressing the situation where the definition of an offense identified a culpable mental state, but did not specify to which element it applied:

> If the definition of an offense prescribes a culpable mental state but does not specify the conduct, circumstances surrounding the conduct, or result of the conduct to which it applies, the culpable mental state applies to each element of the offense.

*Id.* at § 6.06. This provision would have made clear that an element analysis applied. The 1974 Code as passed includes no such provision.

5. Determining whether a particular offense contains more than one conduct element may in itself be problematic. Consider, for example, the case of an aggravated sexual assault. The culpable mental state applicable to that offense is "intentionally or knowingly." *See* Tex.Penal Code Ann. § 22.011(a)(1)(A) (person commits sexual assault if he "intentionally or knowingly . . . causes the penetration of the anus or female organ of another person by any means, without that person's consent"). The question is which conduct element is applicable. It could be argued that "causes the penetration" is either a result of conduct element (the result being penetration) or a nature of conduct element (the nature being penetration). It could further be argued that "without that person's consent" is a circumstance surrounding the conduct or, alternatively, that it goes to the overall nature of the defendant's conduct. The case becomes even more complicated where an aggravated element is added. Under the Court's opinion today, these ambiguities will need to be reconciled in the charge.

underlying offense or conduct may require a different type of mental state, such as nature of conduct or circumstances surrounding the conduct. Similarly, it may be superfluous to include in the definitions all three versions of culpable mental state, when only one or two are applicable and further fail to specify which version is applicable to which offense (intentional murder or the underlying offense or conduct).

A further question is how these problems might be practically dealt with in the charge. Should the mental state definitional portion of the charge consist of separate parts—one part applicable to the offense of intentional murder and another part applicable to the underlying offense or conduct? By way of example, following is a sample of the definitional portion of a charge which might be used in a capital murder case where the defendant has been charged with the murder of a peace officer:

> The following definition of "intentionally or knowingly" applies to the portion of the application paragraph that requires you to determine whether "the defendant did intentionally or knowingly cause the death of" the deceased:
>
>> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
>>
>> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> The following definition of "intentionally or knowingly" applies to the portion of the application paragraph that requires you to determine whether the defendant "knew that [the deceased] was a peace officer":
>
>> A person acts knowingly or with knowledge, with respect to circumstances surrounding his conduct when he is aware that the circumstances exist.

This example was intended to offer the bench and bar one possible way of fashioning a charge that comports with the majority's opinion, in the case of an offense that involves multiple conduct elements. Creativity and clarity are touchstones.

With these comments, I join the opinion of the Court.

CAMPBELL, Judge, dissenting.

This is not a difficult case. Reduced to basics, the issue presented is simply whether there is a reasonable likelihood that the jurors at appellant's trial interpreted the jury charge in a manner that allowed conviction on an unlawful basis. If so, then the charge contains error "calculated to injure the rights of [the] defendant," and appellant is entitled to a new trial under Article 36.19 of the Texas Code of Criminal Procedure.

### The Relevant Facts

On the late evening of July 27, 1990, appellant and Michael Williams got into an argument in Dallas regarding Williams' wife. The argument escalated into a street fight, during which appellant stabbed Williams with a knife. Williams later died at a Dallas hospital. The Dallas County grand jury indicted appellant for murder under Texas Penal Code § 19.02(a)(1), which provides that "[a] person commits an offense if he intentionally or knowingly causes the death of an individual." At trial appellant testified that when he stabbed Williams, he did not mean to kill him.

In its charge to the jury, the trial court submitted, *inter alia*, the following definitions taken verbatim from Texas Penal Code § 6.03:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Appellant objected to these definitions, arguing that murder was a "result offense" and

that, consequently, the definitions of the culpable mental states should have been "limit[ed] ... to the result of the offense only."[1] Apparently, appellant feared that the jury would misunderstand the charge to authorize conviction even if the jury believed only that he intentionally *engaged in the conduct* (i.e., the stabbing) that caused Williams' death. The trial court overruled appellant's objection.

The jury charge also contained the follow application paragraphs:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 27th day of July, 1990 in Dallas County, Texas, the defendant, LAWRENCE EARL COOK, did *intentionally or knowingly cause the death* of MICHAEL WILLIAMS, an individual, by stabbing MICHAEL WILLIAMS with a knife, a deadly weapon, as alleged in the indictment, and that the defendant, in so acting, was not acting under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of murder.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of murder.

If you find from the evidence beyond a reasonable doubt that on or about the 27th day of July, 1990 in Dallas County, Texas, the defendant, LAWRENCE EARL COOK, did *intentionally or knowingly cause the death* of MICHAEL WILLIAMS, an individual, by stabbing MICHAEL WILLIAMS with a knife, a deadly weapon, as alleged in the indictment, but you further find from all the facts and circumstances in evidence in the case that the defendant, in killing MICHAEL WILLIAMS, if he did, acted under the immediate influence of sudden passion arising from an adequate cause, or if you have a reasonable doubt as to whether he so acted under the immediate influence of sudden passion arising from an ade-

quate cause, then you will find the defendant guilty of voluntary manslaughter.

Unless you so find beyond a reasonable doubt that the defendant is guilty of voluntary manslaughter under the instructions given you, or if you have a reasonable doubt thereof, you will acquit the defendant of voluntary manslaughter.

If you find from the evidence beyond a reasonable doubt that the defendant is guilty of either murder or voluntary manslaughter, but you have a reasonable doubt as to which offense he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of voluntary manslaughter.

You are further instructed that before a person can be guilty of murder or voluntary manslaughter under the indictment, he must have *intentionally or knowingly caused the death* of the deceased. Unless you so find beyond a reasonable doubt that the defendant is guilty of murder or voluntary manslaughter, or if you have a reasonable doubt thereof, you will find the defendant not guilty and so state by your verdict.

(Emphasis added.)

The jury found appellant guilty of the lesser offense of voluntary manslaughter. *See* Tex.Penal Code § 19.04. On appeal appellant argued again that the jury charge definitions of the culpable mental states should have been limited to the result of the offense. The Fifth Court of Appeals rejected appellant's argument, however, and affirmed his conviction. *Cook v. State,* 827 S.W.2d 426. (Tex.App.—Dallas 1992). Relying upon *Turner v. State,* 805 S.W.2d 423, 430–431 (Tex. Crim.App.1991), and *Kinnamon v. State,* 791 S.W.2d 84, 87–89 (Tex.Crim.App.1990), the court of appeals held that, in view of the application paragraphs submitted to the jury, "the trial court did not commit reversible error in failing to limit the abstract definitions of the culpable mental states." *Cook v. State,* 827 S.W.2d, at 430.

---

1. Murder is, of course, a "result of conduct" offense. *Martinez v. State,* 763 S.W.2d 413, 419 (Tex.Crim.App.1988).

### The Applicable Law

Article 36.14 provides that "the [trial] judge shall, before the [final] argument begins, deliver to the jury ... a written charge distinctly setting forth the law applicable to the case." Article 36.19 provides, in turn, that

> [w]henever it appears by the record in any criminal action upon appeal that any requirement of Article[ ] 36.14 ... has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of [the] defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial.

"To determine whether [any] errors in the charge were calculated to injure appellant, the whole charge ... must be considered." *Bowlin v. State*, 93 Tex.Crim. 452, 248 S.W. 396, 401 (App.1922). Indeed, "[n]o better rule exists than that the whole charge must be looked to, and the fact that some part of same is wrong will not call for a reversal unless there be danger that the jury were misled, or the cause of the accused injured by the erroneous charge." *McCann v. State*, 129 Tex.Crim. 105, 83 S.W.2d 967, 972 (App. 1935).

In other words, if the charge, when read as a whole, states the law applicable to the case in a manner not reasonably likely to mislead jurors to the defendant's detriment, then the charge is sufficient, although some portion of it, standing alone, might be subject to criticism or objection. We have stated and utilized this fundamental principle on countless occasions. *See, e.g., Cantu v. State*, 842 S.W.2d 667, 690–691 (Tex.Crim.App.1992); *Turner v. State*, 805 S.W.2d 423, 430–431; *Kinnamon v. State*, 791 S.W.2d 84, 87–89; *Holley v. State*, 766 S.W.2d 254, 256 (Tex. Crim.App.1989); *Selvage v. State*, 680 S.W.2d 17, 20 (Tex.Crim.App.1984); *Inman v. State*, 650 S.W.2d 417, 419 (Tex.Crim.App.1983); *Jackson v. State*, 591 S.W.2d 820, 825 (Tex. Crim.App.1980). This principle is also the law throughout the United States. *See Cage v. Louisiana*, 498 U.S. 39, 40, 111 S.Ct. 328,

329, 112 L.Ed.2d 339 (1990); S. Childress & M. Davis, 2 *Federal Standards of Review* § 11.26 (1992); C. Wright, 2 *Federal Practice and Procedure: Criminal* § 485 (2d ed. 1992); 23A C.J.S. *Criminal Law* §§ 1305 and 1352 (1989); 75B Am.Jur.2d *Trial* § 1487 (1992).

### Conclusion

The charge given to the jury at appellant's trial, when read as a whole, stated the applicable law in a manner that was not reasonably likely to mislead the jury into convicting on an unlawful basis. That is, there is no reasonable likelihood that the jury convicted appellant just because they thought he engaged in the conduct (i.e., the stabbing) that ultimately caused Williams' demise. Although the abstract, definitional portion of the jury charge contained unnecessary "engage in conduct" language, it is very unlikely that language misled the jury given the explicit limiting instructions contained in the application paragraphs. The application paragraphs instructed the jurors quite clearly that they could not find appellant guilty of murder or manslaughter unless they first found beyond a reasonable doubt that he "intentionally or knowingly caused the death of the deceased."

The majority opinion is not aided by our decisions in *Alvarado v. State*, 704 S.W.2d 36 (Tex.Crim.App.1985); *Kelly v. State*, 748 S.W.2d 236 (Tex.Crim.App.1988); and *Haggins v. State*, 785 S.W.2d 827 (Tex.Crim.App. 1990). In all those cases, unlike the instant case, the jury charge was such that it *could* have been interpreted by reasonable jurors as authorizing conviction if the jurors believed only that the defendant intentionally or knowingly *engaged in the conduct* that caused the victim's injury.

The majority opinion is disturbing because it is based upon a serious misunderstanding of our precedents regarding charge error. The majority's determination to overrule *Kinnamon, supra*, is particularly disturbing, since our decision in that case was sound and so very recent.[2] In my view, the very

---

**2.** In *Kinnamon*, a capital murder case, the defendant objected to the jury charge because its defi-

nition of "intentional" tracked Texas Penal Code § 6.03(a), i.e., it included superfluous "engage in

weighty considerations underlying the doctrine of *stare decisis* preclude the overruling of such a case. *See Garrett v. State,* 851 S.W.2d 853, 862–863 (Tex.Crim.App.1993) (Campbell, J., dissenting). Therefore, I dissent. I would affirm the judgment of the court of appeals.

McCORMICK, P.J., and WHITE and MEYERS, JJ., join.

conduct" language. The trial court overruled the defendant's objection, however. On appeal we held, after a lengthy discussion, that the jury charge did not contain reversible error because, *when read as a whole,* it properly instructed the jurors that they could find the defendant guilty only if they believed he *intentionally caused the* *death* of the victim. We stated that, "[w]hen read in conjunction with the application paragraph, the phrase 'engage in conduct' in the abstract definition of 'intentional' did not provide for any additional degree of culpability." *Kinnamon v. State,* 791 S.W.2d, at 89.