Affirmed and Memorandum Opinion
filed December 3, 2009 

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00330-CR



Mario Antonio
Bellard, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 252nd District Court

Jefferson County, Texas

Trial Court
Cause No. 87647



 

MEMORANDUM OPINION 

A jury convicted appellant Mario Antonio Bellard of
murder, sentenced him to thirty years’ confinement in the Texas Department of
Criminal Justice, and assessed a fine of $10,000.  In three issues, appellant
asserts that the trial court reversibly erred by (a) improperly charging the
jury on the definitions of “intentionally” and “knowingly” and (b) denying his federal
and state constitutional right to compulsory process for the presence and
testimony of a material witness.[1] 
We affirm.

I.  Background

In February 2002, Port Arthur Police Department (“PAPD”)
Sergeant Frank Ramirez responded to a call at the Carver Terrace Apartments in
north Jefferson County.  There, Ramirez discovered the body of the decedent,
Nelson Ozane, lying face down on the ground, with spent shell casings nearby. 
During the PAPD investigation, officers first arrested Leon Davis as a suspect,
based on an identification of Davis by Tremaine Lewis.  But after further
investigation and Lewis’s recantation of his identification, charges against
Davis were dropped, and he was released.  PAPD officers next focused their
investigation on appellant based on his known involvement with the Wood Boys
gang and several tips developed during their investigation.  Appellant agreed
to accompany PAPD officers into the station for a voluntary interview.  Appellant
executed a voluntary notarized written statement, in which he stated:

·       
He was a member of the Wood Boys gang.

·       
He knew about the shooting at the Carver Terrace Apartments.

·       
Albert Wilson from Beaumont wanted to join the Wood Boys gang,
but was told he had to “earn his stripes” to join.  Wilson was told by several
Wood Boys members that he could “earn his stripes” by shooting at “anybody from
the West Side.”  Wilson agreed to do so.

·       
Wilson asked appellant if he could borrow his “heater,” which was
a .380 caliber black semi-automatic gun.  Appellant gave the gun to Wilson.

·       
Appellant drove Wilson, D’Artagnan Arceneaux, and two others to
the apartment complex and dropped Wilson off nearby.  Appellant parked and
waited for Wilson’s return, but when Wilson did not return in ten or fifteen
minutes, appellant moved his car to another location.

·       
After a short time had passed, appellant saw Wilson running down
a nearby street and picked him up.  Wilson told appellant and the others in the
vehicle that he had shot an individual several times.

Appellant, Arceneaux, and
Wilson were later arrested and charged with the decedent’s murder.

            At appellant’s
trial, the State relied on the theory that appellant was guilty of the
decedent’s murder as a party.  Several PAPD officers testified regarding their
investigation into the decedent’s murder.  Appellant’s statement, detailed
above, was admitted into evidence.  A PAPD officer explained that during the
PAPD investigation, officers discovered a .380 caliber handgun in a white van
that appellant and his brother were known to drive.  A ballistics expert
testified that the shell fragments and casings recovered from the murder scene
and found in the decedent’s body were fired from that particular .380 caliber
handgun.  The medical examiner testified that the decedent died from gunshot
wounds.  

In addition, after reaching an agreement with the
State, Arceneaux testified regarding both his and appellant’s involvement in
the Wood Boys gang and the decedent’s murder.  Arceneaux’s description of the
events surrounding the decedent’s murder was similar to appellant’s statement,
although Arceneaux testified that he was driving the vehicle the evening that
Wilson shot the decedent.  Additionally, Arceneaux admitted that he had pleaded
guilty for his involvement with the decedent’s murder and that, as a result of
his truthful testimony at appellant’s trial, his punishment would be capped at
fifteen years’ confinement.  The State rested after Arceneaux’s testimony.

Appellant called Albert Wilson to the stand.  Wilson
testified that he was also charged with the decedent’s murder, but that he was
not involved and had no knowledge of the incident.  Wilson stated that he was
not a member of the Wood Boys and that he did not drive to the Carver Terrace
Apartments with appellant and Arceneaux on the night in question.  Wilson further
testified that he had never seen the murder weapon and did not ask appellant
for or receive the gun from appellant.  In addition, appellant presented the
testimony of former PAPD detective Robert Whitesel.  Whitesel explained that the
first suspect in the decedent’s murder was Leon Davis, who had been identified
as the shooter by Tremaine Lewis.  On cross-examination, Whitesel testified
that several inconsistencies were discovered in Lewis’s statement and that
Lewis later admitted he made up his statement identifying Davis.  Whitesel also
explained that the PAPD subsequently developed appellant, Wilson, and Arceneaux
as suspects.   Appellant then called Lewis, who failed to appear.  After Lewis
failed to appear, appellant moved for a continuance, which was denied by the
trial court.  Appellant then rested his case.

After a brief rebuttal by the State, both sides
rested and closed, and the trial court charged the jury.  The jury convicted
appellant of murder, sentenced him to thirty years’ confinement in the
Institutional Division of the Texas Department of Criminal Justice, and
assessed a fine of $10,000.  

II.  Issues Presented

In his first issue, appellant contends that the trial
court erred by including improper definitions of “intentionally” and
“knowingly” in the jury charge.  In his second and third issues, appellant
asserts that the trial court denied his federal and state constitutional rights
to compulsory process for the presence and testimony of a material witness.

III.  Analysis

A.        Charge Error

Appellant complains of the following definitions of
“intentionally” and “knowingly” included in the abstract portion of the jury
charge:

A person acts intentionally, or with intent, with respect
to the nature of his conduct or to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or cause the result.

. . . 

A person acts knowingly, or with knowledge, with respect to
the nature of his conduct or to circumstances surrounding conduct when he is
aware of the nature of his conduct or that the circumstances exist[].  A person
acts knowingly, or with knowledge, with respect to a result of his conduct when
he is aware that his conduct is reasonably certain to cause the death.

Murder is a “result of conduct” offense, meaning that
the culpable mental state relates to the result of the conduct, i.e., causing
the death.  Roberts v. State, 273 S.W.3d 322, 329 (Tex. Crim. App.
2008); Schroeder v. State, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003)
(en banc).  The State concedes that it was error for the jury charge to include
“nature of conduct” definitions in the jury charge.  See, e.g., Medina
v. State, 7 S.W.3d 633, 639–640 (Tex. Crim. App. 1999) (“We agree that it
is error to define a knowing murder as to the nature of conduct alone.  The
most accurate definition of knowingly would have referred to the result of
conduct.”); Jones v. State, 951 S.W.2d 522, 525 (Tex. App.—Beaumont
1997, pet. ref’d) (concluding that charge defining “intentionally” or
“knowingly” as relating to the nature of the conduct as well as the result of
the conduct is error).  

But finding error in the jury charge begins, rather
than ends, our inquiry.  See Jones, 951 S.W.2d at 525 (citing Cook v.
State, 884 S.W.2d 485, 494 (Tex. Crim. App. 1994) (en banc)). Where, as
here, no objection was made at trial, the error requires reversal only if it is
so egregious and created such harm that the appellant has not had a fair and
impartial trial.  Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984) (en banc) (op. on reh=g). 
The actual degree of harm must be assessed in light of the entire jury charge,
the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel, and any other relevant information
revealed by the record of the trial as a whole. Id.  We consider the
degree, if any, to which the culpable mental states, broadly defined in the
abstract portion of the charge, were limited by the application portions of the
jury charge. Patrick v. State, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995);
Davis v. State, 967 S.W.2d 476, 479 (Tex. App.—Beaumont 1998, no pet.).

In this case, the application paragraph of the jury
charge properly limited the culpable mental state to the result of
appellant’s conduct:

Now if you believe from the evidence beyond a reasonable
doubt that . . . the defendant MARIO ANTONIO BELLARD, either acting alone or as
a party, as that term has been defined, did then and there intentionally or
knowingly cause the death of an individual, namely:  NELSON OZANE,
hereafter styled the Complainant, by shooting Complainant with a deadly weapon,
to wit:  a firearm, you shall find the defendant guilty of the offense of
MURDER.

(emphasis added).  “Where the
application paragraph correctly instructs the jury, an error in the abstract
instruction is not egregious.”  Medina, 7 S.W.3d at 640; see also
Davis, 967 S.W.2d at 479; Jones, 951 S.W.2d at 525.  Thus, appellant
was not denied a fair and impartial trial because the erroneous abstract
definitions of “intentionally” and “knowingly” were appropriately limited in
the application paragraph to the result of appellant’s conduct.  See Davis,
967 S.W.2d at 479; Jones, 951 S.W.2d at 525. We therefore overrule appellant’s
first issue.   

B.        Compulsory
Process of Witness

In his second and third issues, appellant complains
that the trial court violated his state and federal constitutional rights to
compulsory process by (a) instructing law enforcement officials to abandon
their efforts to execute a Writ of Attachment, and (b) arbitrarily denying his
request for a continuance to secure the presence of the witness subject to this
writ.  The State responds that appellant failed to preserve this complaint
because he did not object on this basis.  An accused’s right to compulsory
process for obtaining witnesses is embodied in both federal and state law.  See
U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05
(Vernon 2005); see also Washington v. Texas, 388 U.S. 14, 19 (1967).  But
almost all error, even constitutional error, may be forfeited if a defendant
fails to object.  Fuller v. State, 253 S.W.3d 220, 232 (Tex. Crim. App.
2008); Hawkins v. State, 964 S.W.2d 767, 769–70 (Tex. App.—Beaumont
1998, pet. ref’d).

Here, a subpoena was issued for Tremaine Lewis; it
was properly served and executed, with the return sent to the court.  Lewis,
however, failed to appear as directed in the subpoena, and after his name was
called at the courthouse door with no reply, the trial court issued a Writ of
Attachment.  Law enforcement personnel unsuccessfully attempted to serve the
writ:  the officer charged with serving the writ discovered that Lewis allegedly
was located at his mother’s home, but was denied entry to the home when he attempted
to serve the writ.  Lewis’s name was called at the courthouse door again, but
he did not appear.  Appellant orally moved for a continuance:  

I would ask the Court for a continuance in an effort to
attempt to locate [Lewis].  As the Court is aware, I know that the sheriff’s
office has been diligently working on trying to locate him since yesterday
afternoon, without success; but I still would ask the Court for a continuance
in an effort to locate him.

The trial court denied the motion,
and the defense rested without objection.[2]


The record reflects that appellant failed to object that
the trial court’s actions deprived him of his right to compulsory process.  Thus,
he has not preserved this complaint for our review.  See Tex. R. App. P. 33.1(a)(1)(A); Buchanan
v. State, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006); Gonzalez v. State,
714 S.W.2d 19, 25 (Tex. App.—Houston [1st Dist.] 1985, no pet.) (supp. op. on
reh’g) (concluding that the appellant waived his complaint regarding violation
of his right to compulsory process by failing to object on that basis at
trial).  Moreover,

[w]hile a guarantee of compulsory process for obtaining a
witness means that the accused is entitled, as matter of right, to invoke the
aid of the law to compel the personal attendance and actual presence of a
witness at his trial when their presence is obtainable, nevertheless, it does
not amount to guarantee of actual attendance of such witness, and the fact that
despite all efforts being made the witness is still absent at the time of the
trial, this absence does not show a denial of any constitutional right of the
defendant.

Sigard v. State, 537
S.W.2d 736, 739 (Tex. Crim. App. 1976). Under these circumstances, we
overrule appellant’s second and third issues.

IV. 
Conclusion

Having overruled each of appellant’s issues, we
affirm the trial court’s judgment.

 

 

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Justices Yates, Anderson,
and Boyce.

Do
Not Publish — Tex. R. App. P. 47.2(b).                                                                    

 









[1]
This case was transferred to this court from the Tenth Court of Appeals.  In
cases transferred by the Supreme Court from one court of appeals to another,
the transferee court must decide the case in accord with the precedent of the
transferor court if the transferee court’s decision would have been
inconsistent with the precedent of the transferor court.  See Tex. R. App. P. 41.3.





[2]
No motion for new trial was filed raising this complaint.