

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0383-14

**ERIC RAY PRICE, JR., Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### HAMILTON COUNTY

**YEARY, J., filed a concurring opinion.**

### <u>CONCURRING OPINION</u>

I agree that we ought to affirm the judgment of the court of appeals in this case. But

my reasoning differs from the Court's, which I find problematic. I write separately to explain

why I hesitate to join the Court's opinion if not its judgment.

Tracking the statutory language, the indictment charged that Appellant:

intentionally, knowingly, or recklessly cause[d] bodily injury to [the victim],
a person with whom the defendant had or had had a dating relationship, as
described by Section 71.0021(b), Family Code, by intentionally, knowingly,

or recklessly impeding the normal breathing or circulation of the blood of the said [victim] by applying pressure to the throat or neck of the said [victim].

The Court concludes that "the second set of culpable mental states applies only to the result of impeding breathing or circulation of the blood[.]" Majority opinion at 9. Because the Court concludes that this element, which raises the offense to third-degree-felony status, is a result-of-conduct element for purposes of Section 6.03 of the Penal Code, TEX. PENAL CODE § 6.03, it holds that the trial court did not err in neglecting to submit an abstract instruction to the jury with respect to required culpability relating nature-of-conduct elements.[1] It was enough, the Court reasons, that the trial court gave an abstract instruction with respect to how intentional, knowing, and reckless should each be understood to apply to the result of conduct.

I am not so confident. To me, impeding the breath or circulation sounds a lot more like the description of a *type* of conduct than the description of a particular *result* of conduct. Certainly, causing bodily injury is a result-oriented offense. But when the statute goes on to proscribe a very particular way of causing that result—by impeding breath or

---

[1] "[T]he instruction properly defined the offense as solely a result of conduct and was not erroneous." Majority opinion at 9.

I presume that what Appellant would have had the trial court instruct the jury is that: "A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. A person acts knowingly, or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct." TEX. PENAL CODE § 6.03(a) and (b). I am not sure what Appellant would have had the trial court instruct the jury with respect to recklessness, since Section 6.03(c) does not provide an abstract definition of recklessness as it applies to the nature of conduct. TEX. PENAL CODE § 6.03(c).

circulation—and then makes that particular way of causing bodily injury a more serious offense, it seems to me that the Legislature has veered into nature-of-conduct territory. I suppose one could say that the result of the actor's conduct is that his victim's breathing or circulation has been impeded. But that does not seem the more natural reading to me. One could just as readily argue that aggravated sexual assault (as that offense is variously defined by statute) is a result-of-conduct offense because, after all, the result of the conduct is that the victim has been sexually assaulted. But we do not say that. *See Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999) ("Article 22.021 [of the Texas Penal Code] is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types.").

I realize that the culpable mental state of recklessness does not ordinarily apply to nature-of-conduct offenses—at least not in contemplation of chapter six of the Penal Code. Section 6.03(c) defines recklessness only in terms of result of conduct and circumstances surrounding conduct, not nature of conduct. TEX. PENAL CODE § 6.03(c). But I doubt this is the first time (or that it will be the last) that the Legislature has ascribed a reckless culpable mental state to a nature-of-conduct-seeming offense, whether deliberately or inadvertently. And we would be hard pressed to hold that the Legislature may not!

All of that said, in the final analysis, on the facts of this particular case, I do not think it much matters whether the particular statutory aggravator (impeding the breath or circulation) is a result-of-conduct element or a nature-of-conduct element. Appellant did not

object, so he must demonstrate that any error caused him egregious harm. The application

paragraph required the jury to find, if it was to convict Appellant, that he:

> intentionally, knowingly, or recklessly cause[d] bodily injury to [the victim]
> . . . by intentionally, knowingly, or recklessly impeding the normal breathing
> or circulation of the blood of [the victim] . . .

I find it difficult to conceive how the jury could have been seriously disadvantaged by the

absence of an abstract definition with respect to mental culpability as it applies to nature-of-

conduct offenses. The jury was told that, in order to convict, it must find that it was

Appellant's conscious objective to cause the result (or that he was reasonably certain his

conduct would cause the result) that the victim's breath or circulation would be impeded. The

difference between the instruction given and what Appellant now claims the trial court

should have submitted—that, before it could convict, the jury must find that it was

Appellant's conscious objective or desire to engage in the conduct of impeding the breath or

circulation of the victim (or that he must have been aware he was engaging in that

conduct)—appears to me to be negligible. Perhaps it is not a coincidence that the difference

should seem negligible when it is so hard to distinguish, in the first place, whether the statute

with respect to the "impeding element" proscribes a particular type of conduct or, instead,

a particular result that is the product of undifferentiated conduct![2] Choking is choking; it is

---

[2] The trial court undoubtedly deliberately avoided instructing the jury broadly under the terms of Section 6.03 of the Penal Code out of a concern not to contravene the holding of cases such as *Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994). *Cook* held that it constitutes jury charge error to submit culpable-mental-state definitions in the abstract portion of the jury charge that pertain to elements of conduct that do not appear in the particular penal offense at issue in the case. For example,

hard to imagine a jury that would find that Appellant intentionally, knowingly, or recklessly caused an impediment to the victim's breath or blood flow but would also fail to find that he intentionally or knowingly engaged in conduct that impeded those bodily functions. Whatever the difference may be, it is certainly not enough to say that Appellant has suffered egregious harm. That is to say, it did not affect the very basis of the case, deprive Appellant of a valuable right, or vitally affect a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). For this reason, I concur in the Court's judgment.

FILED:      April 15, 2015
PUBLISH

---

*Cook* itself involved a prosecution for intentional murder, which is a purely "result of conduct" offense. *Id*. at 490. We held that the trial court erred to submit language in the abstract-definitions portion of the jury charge with respect to how culpable mental states should apply to nature-of-conduct and circumstances-surrounding-conduct elements: "It is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense." *Id*. at 491. Accordingly, we reversed and remanded for a harm analysis under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on State's motion for reh'g). *Id*. at 491-92.

That our holding in *Cook* was misguided is, to my way of thinking, well illustrated by the facts of the instant case. Had the jury been instructed under the complete terms of Section 6.03 with respect to the proper application of culpable mental states regarding every conduct element, Appellant would have no grounds for complaint today. Regardless of whether the jury regarded the impeding of the victim's breath or blood as nature of conduct or result of conduct, it would have been equipped to apply the law to the facts. To the extent that the jury charge might also contain definitions that the jury did not need, that information would have constituted no more than "merely superficial abstraction," which, we have held, "never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs." *Plata v. State*, 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996), *overruled on other grounds*, *Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997) (overruling "the *Benson/Boozer* line of cases"). I would invite the Court to revisit *Cook* at its earliest appropriate opportunity. Because there is no egregious harm in any event in Appellant's case, we need not do so today.