# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00417-CR

**Carl William Whoberry, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
## NO. 3013455, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Carl William Whoberry of the capital murder of Dale Johnson, and he was sentenced to life in prison. *See* Tex. Pen. Code Ann. § 19.03 (West Supp. 2004-05). Whoberry challenges his conviction in four issues contending that the evidence was legally and factually insufficient to show the murder was committed in the course of a robbery, that the district court abused its discretion by allowing the testimony of a witness not named on the State's witness list, and that there was error in the jury charge. We overrule appellant's complaints and affirm the conviction.

## BACKGROUND

Carl Whoberry, Bernard Malli, Jackie Wilson, and Michael Barnes beat and killed Dale Johnson on the evening of October 17, 2001. Johnson, a homeless man, had established a

campsite in an area of abandoned buildings near the intersection of Airport Boulevard and North Lamar in Austin. On the evening of the murder, Johnson had been drinking after work with his friend Don Baker. The two met Whoberry, Malli, Wilson, and Barnes at the campsite and they all continued drinking. Shortly thereafter, all were intoxicated and Whoberry and Johnson began fighting.[1] Malli, Wilson, and Barnes took Whoberry's side in the fight and Johnson was badly beaten. When Baker attempted to come to Johnson's aid and stop the fight, Malli, Wilson, and Barnes attacked him as well. During the fray, Whoberry's girlfriend Wilson took Baker's wallet, searched it for money, and then discarded it. Soon the three of them turned their attention away from Baker and rejoined Whoberry who had continued to assault Johnson. Barnes testified that Whoberry kicked Johnson in the head "quite a few" times. Baker was knocked down and beaten three more times before he escaped and was hospitalized for several days after EMS found him. Johnson was not so fortunate.

Then Johnson was tied to a fence, his hands above his head, while the group took turns punching and kicking him. He begged for them to stop. Eventually Barnes untied Johnson and placed him in a hollowed out space under a loading dock; Wilson and Malli continued to assault Johnson as he lay there helpless. They pulled Johnson's pants below his knees and inserted a panty liner in his anus. Barnes testified that Malli took a wallet from Johnson's back pocket during the fight, but he could not recall at what point it was taken or what happened to it. At the end of the

---

[1] Baker and Barnes were the only eyewitnesses to testify about the evening's events. Their accounts of the fighting were generally consistent. Jackie Wilson was the current girlfriend of Whoberry, and Johnson's comments concerning her may have provoked the initial fight.

evening, Wilson and Whoberry left. Malli and Barnes stayed the night on the loading dock and departed the next morning. No one tended to Johnson.

After Baker got out of the hospital, he tried to find Johnson. When nobody had heard from him, Baker called the police; they found Johnson's decomposed body ten days after the assault in the hollow under the loading dock. After interviewing Baker, the police quickly identified Whoberry, Malli, Wilson, and Barnes as suspects. Whoberry and Wilson were arrested at Wilson's sister's apartment in Austin. Whoberry had recently given a pair of his boots to Wilson's nephew, who passed them on to the police. Johnson's wallet, containing his social security card and other identification, was found stuffed inside one of Whoberry's boots. Malli and Barnes fled but were arrested out of state.

## DISCUSSION

Whoberry first contends that the State's evidence was legally and factually insufficient to establish that he murdered Johnson in the course of a robbery. *See* Tex. Pen. Code Ann. § 19.03(a)(2). When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing

3

*Jackson*, 443 U.S. at 318-19).  In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses.  *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.).  Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice.  *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).  The evidence will be deemed factually insufficient to sustain the conviction if the evidence of guilt, considered alone, is too weak to support a finding of guilt beyond a reasonable doubt, or if the strength of the contrary evidence precludes a finding of guilt beyond a reasonable doubt.  *Zuniga*, 144 S.W.3d at 484-85.  In conducting a legal or factual sufficiency review, we consider all the evidence, rightly or wrongly admitted.  *See Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.).

To establish that a murder was committed during the course of robbery, the State must prove that the defendant possessed the specific intent to obtain or maintain control of the victim's property either before or during the commission of the murder.  *Maldonado v. State*, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999); *Brewer v. State*, 126 S.W.3d 295, 297 (Tex. App.—Beaumont 2004, pet. ref'd).  While direct evidence of the robbery is not required, the circumstances must support more than a suspicion of guilt.  *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002).  There must be evidence from which the jury could rationally conclude beyond a reasonable doubt that the defendant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the murder.  *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).  Proof of a robbery committed as an afterthought and unrelated to a murder will not provide sufficient evidence of capital murder.  *Id.*; *Moody v. State*, 827 S.W.2d 875, 892 (Tex.

4

Crim. App. 1992). However, proof that a robbery occurred immediately after the murder may establish capital murder. *Huffman v. State*, 746 S.W.2d 212, 217 (Tex. Crim. App. 1988). A jury may reasonably infer that a murder was committed in the course of a robbery when the assailant is found in possession of the victim's property. *See id.*; *Upton v. State*, 853 S.W.2d 548, 552 (Tex. Crim. App. 1993); *McGee v. State*, 774 S.W.3d 229, 234 (Tex. Crim. App. 1989).

The people involved in this drama all lived on the street and congregated around the day labor hall where they often found work. Business records showed that Johnson worked consistently and typically earned around $300 a week. Baker testified that on the evening in question, Johnson had cashed his pay check, repaid Baker $20, and still had a couple of hundred dollars in cash. Baker added that Johnson normally carried his money in his wallet. Barnes testified that Malli took Johnson's wallet during the incident: Johnson's wallet was recovered from Whoberry's boot, but the money was missing. During the assault on the other victim—Baker—Whoberry's girlfriend Wilson removed Baker's wallet and searched it for cash. Baker testified that money in the wallet was taken, as were his binoculars, but his attackers didn't find the $20 bill that Johnson had just given him because it was in his right pocket, not in his wallet. The jury reasonably could have inferred from these facts that Whoberry was in possession of the wallet after the murder and that he had intended to obtain the wallet by acting in concert with Malli in beating Johnson to death. *See Upton*, 853 S.W.2d at 552; *McGee*, 774 S.W.3d at 234; *Huffman* 746 S.W.2d at 217.

Whoberry points to two recent cases in which the evidence was found to be insufficient to establish robbery in the course of a murder. *See Herrin*, 125 S.W.3d at 442; *Brewer*, 126 S.W.3d at 303. In *Herrin*, a mentally unstable man shot a neighbor in an unprovoked attack.

5

*Id*. at 438. There was evidence that the victim was carrying a wallet earlier in the day and that the wallet was missing after the murder. *Id*. at 441. The wallet was never found. *Id*. The court of criminal appeals held that this evidence was insufficient to establish a robbery in the course of the murder, explaining that "[t]here is no evidence that [Herrin] knew [the victim] had any money in his wallet or that [Herrin] even knew whether [the victim] had his wallet with him, and *there is no evidence linking [Herrin] to the wallet*." *Id*. at 441-42 (emphasis added). Similarly, the Beaumont court of appeals held evidence insufficient to establish robbery in the course of a murder where the victim's empty wallet was found on the floorboard of the car, but there was no other evidence that a robbery occurred. *Brewer*, 126 S.W.3d at 303. As in *Herrin*, none of the victim's property was found in the appellant's possession. *See id*. By contrast, there is direct testimony that Johnson was carrying over $200 that evening, and it is undisputed that he was robbed during the beating that resulted in his death. Moreover, Whoberry was directly linked to Johnson's wallet. Accordingly, we hold that there was legally sufficient evidence that Whoberry committed robbery in the course of murdering Johnson.

In his factual sufficiency argument, Whoberry stresses the fact that he was not the one that removed Johnson's wallet from Johnson's back pocket. Although this may be some evidence that Malli, not Whoberry, intended to rob Johnson, the strength of this testimony does not preclude a finding of guilt beyond a reasonable doubt. *See Zuniga*, 144 S.W.3d at 484-85. As we have discussed above, the jury could have reasonably inferred from Whoberry's possession of the wallet that he acted in concert with Malli to kill Johnson in the course of stealing Johnson's wallet. We overrule Whoberry's first and second issues.

6

**Witness List**

In his third issue, Whoberry contends that the district court abused its discretion by permitting Barnes to testify even though he was not named on the State's witness list. Upon the request of the defendant, the State must give notice of its witnesses prior to trial. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993). "If the trial judge allows a witness to testify who does not appear on the State's witness list, we consider whether the prosecutor's actions constitute 'bad faith' and whether the defendant could have reasonably anticipated the witness' testimony." *Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000) (quoting *Martinez*, 867 S.W.2d at 39). We review the trial court's decision to allow such testimony under an abuse of discretion standard. *Id*.

It is undisputed that Barnes's name never appeared on the State's witness list. Whoberry argued at trial that he was caught by surprise when the State called Barnes as a witness and that defense counsel was not prepared to cross examine this important witness. The State countered that it informed Whoberry's counsel weeks before trial that there was "a very strong possibility" that Barnes would be called as a witness. Barnes's defense counsel also testified that he told Whoberry's counsel that there was a "distinct possibility" that Barnes would agree to testify. Whoberry did not dispute this testimony or allege that the State intended to deceive him. He did not request a continuance in order to prepare, and the court recessed after the State's direct examination of Barnes to allow Whoberry's counsel to review Barnes's statement and prepare his cross examination. Nothing in the record indicates bad faith by the State in omitting Barnes's name from the witness list. *See Wood*, 18 S.W.3d at 49. Furthermore, Whoberry's counsel was informed by both the State and Barnes's counsel that Barnes was a likely witness. In light of these conversations, as well as Barnes's central role in the crime, Whoberry could reasonably have anticipated that Barnes

7

would be called to testify even though his name did not appear on the witness list. *See id.* We hold that the district court did not abuse its discretion in allowing Barnes's testimony and overrule Whoberry's third issue.

**Definition of Intentional**

In his fourth issue, Whoberry contends that the district court erred by including in the jury charge both the "conduct-oriented" and "result-oriented" definitions of intentional. He argues that this definition allowed the jury to convict him of capital murder even if it believed he did not intend to kill Johnson. Whoberry complains of the following definition:

> A person acts intentionally, or with intent, with respect to [] the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

This paragraph tracks the penal code definition and is followed by general definitions of other culpable mental states. *See* Tex. Pen. Code Ann. § 6.03 (West 2003). Whoberry argues that, because this paragraph defines intentional as the "desire to engage in the conduct *or* cause the result," the jury was permitted to convict him of capital murder even if it believed he did not intend to kill Johnson.

In *Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994), the court of criminal appeals held that in a murder trial it is error for a trial court not to limit the definition of a culpable mental state to the result of conduct. *Id.* at 491. However, the court has also held that in a capital murder trial where the state must prove not only the result-oriented offense of murder but also an additional conduct-oriented offense, such as robbery, it is not error for the definition of intentional

8

to include more than the result of conduct element. *Hughes v. State*, 897 S.W.2d 285, 295-97 (Tex. Crim. App. 1995). To prove murder, the State was required to prove that Whoberry intentionally caused the death of Johnson as a result of his conduct. To prove capital murder, the State was required to prove that the murder occurred in the context of robbery or aggravated robbery; this was a nature of the offense element. Thus, it was not error for the trial court to define the culpable mental states in terms of the nature of the conduct as well as the result of the conduct language, as long as the nature of the conduct language was limited to the nature of conduct elements. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995). The nature of the conduct language here was not limited to the commission of the offense making this a capital murder.[2]

Because Whoberry made no objection to this instruction, we will reverse only if the alleged error was so harmful as to deny him a "fair and impartial trial." *Id*.; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). In *Patrick,* the definition was not specifically limited, but the application paragraph instructed the jury to convict the appellant only if they found beyond a reasonable doubt that he intentionally caused the death of the victim. *Patrick* held that because the facts as applied to the law in the application paragraph "pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definition of culpable mental states to proving the conduct element of the underlying offense." *Id*. at 493.

Despite the mixed definition of intentional, the application paragraph of the charge in this trial instructed the jury to convict the accused of capital murder only if it believed beyond a

---

[2] The court of criminal appeals provided an example of a charge that appropriately limits the culpable mental state for the offense charged in *Hughes v. State*. 897 S.W.2d 285, 296 n.16 (Tex. Crim. App. 1994).

reasonable doubt that he "intentionally cause[d] the death of . . . Dale Johnson, by choking or kicking or striking him with a boot. . . ." As in *Patrick,* this paragraph served to point the jury to the appropriate part of the definition of intentional.

Whoberry points to the State's misleading closing argument as evidence of the harm he suffered from the unlimited definition in the jury charge:

> And don't let him off the hook because he didn't intend to cause the murder. And maybe he did. We don't know. But the law is written this way so you can't kind of play these semantic games at this point. That's like saying, I have a loaded gun. I walk up to Mr. Gonzalez. I put a round in his head. I can still honestly maybe say I did not have the intent to kill him. But the law says if you intended the conduct, you are guilty of the offense. . . . But what I'm telling you is, this man intended the conduct.
>
> * * *
>
> Let's talk about the theft for a second. This is a capital murder if he intends the conduct in the course of committing aggravated robbery or robbery.

The closing argument does erroneously suggest that the jury need only find that Whoberry intended his conduct, not the result of his conduct, to be guilty of murder. However, Whoberry did not object to these comments at trial and has not raised an issue claiming error in the State's closing argument. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (failure to object to improper closing argument generally waives error).

Although the charge included both the "conduct-oriented" and "result-oriented" definitions of the term intentional, the application paragraph left no confusion that the jury had to find that Whoberry intended to cause Johnson's death and not that Whoberry simply intended to engage in the conduct that resulted in the death:

10

> [I]f you believe from the evidence beyond a reasonable doubt that the defendant . . . did then and there *intentionally cause the death* of an individual, namely, Dale Johnson, by choking or kicking or striking him with a boot . . . .

(Emphasis added.) The definition of capital murder included in the charge also specified that Whoberry must have "intentionally or knowingly cause[d] the death of an individual." Nothing in the charge would permit the jury to convict Whoberry of capital murder if it found only that Whoberry intended to engage in the beating of Johnson and did not intend to cause his death. *See Patrick*, 906 S.W.2d at 493. The jury is presumed to have followed the law as stated in the charge. *Holberg v. State*, 38 S.W.3d 137, 140 (Tex. Crim. App. 2000); *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). Accordingly, we find no harm and overrule Whoberry's fourth issue.

## CONCLUSION

Having overruled all of Whoberry's issues, we affirm the district court's judgment of conviction.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: November 17, 2005

Do Not Publish

11