

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-11-00181-CR

AARON BENTON WATSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Aaron Benton Watson of murder and assessed his punishment at thirty years' confinement and a $2,500 fine. The trial court sentenced him accordingly. Appellant brings six issues on appeal, arguing charge error and jury selection error and contending that the evidence is not sufficient to disprove his self-defense claim. Because the trial court committed

---

[1]*See* Tex. R. App. P. 47.4.

no reversible error and the evidence is sufficient to support Appellant's conviction and the jury's rejection of his claim of self-defense, we affirm the trial court's judgment.

**Background Facts**

On September 25, 2009, Appellant drove his girlfriend Amanda Buchanan to an engagement party. After the party, Appellant drove Buchanan and her friend, Heather Scoggins, back to Scoggins's apartment. At Scoggins's apartment, Appellant and Buchanan had a physical altercation in the bathroom; Appellant "kind of pushed her," causing her to hit her head on the soap dish mounted in the tub.

Appellant left Scoggins's apartment, walked to his truck, and tried to leave the apartment complex. Appellant could not find his car keys, however, so he returned to Scoggins's apartment.

In the meantime, Scoggins had gone to her next-door neighbor's apartment and borrowed a cell phone from Heather Gourley (Gourley), who was outside, to call the police. Gourley, her boyfriend Samuel Zamora, her sister Charlotte, and Charlotte's husband Victor Vasquez, along with Victor and Charlotte's children, all lived next door and were present that evening. Gourley's cousin, Cody, was also visiting the apartment that evening.

Upon his return to Scoggins's apartment, Appellant checked on Buchanan and asked her to leave with him, but she refused. As he left the apartment this time, Appellant noticed Scoggins in the front doorway, on the phone. Appellant

2

asked her if she had called the police. At trial, witnesses testified to different versions of Appellant's actions at this point.

It was the consensus that Appellant was angry, and Appellant and Gourley both testified that Appellant threw a bottle through Scoggins's front window and then headed back to his truck.

Zamora, Gourley, Vasquez, and Cody followed Appellant to his car; Gourley testified that they did so to tell him to leave. Appellant retrieved a screwdriver from his truck and placed it under his shirt. Zamora and Appellant swung at each other. Appellant punched Zamora with the hand that held the screwdriver and stabbed him in the head, causing injury that resulted in his death. Appellant then fled the scene on foot.

At trial, Appellant testified and asserted self-defense. He testified that on the night in question, Zamora, Gourley, and Vasquez followed him to his truck and yelled at him while he was searching for his keys. Appellant testified that he felt threatened and that he got out of his truck to retrieve a screwdriver from the bed of his truck. Appellant placed the screwdriver under his shirt and pretended that he had a gun. He told Zamora, Gourley, and Vasquez to leave him alone or else he would shoot them. Appellant testified that his threats did not stop the group from advancing.

Appellant said that Gourley yelled at him about his behavior around children and that Zamora threatened to "kick [his] ass." Appellant testified that he retreated from the group but that Zamora and Gourley followed him and Gourley

3

"bow[ed] her chest" two or three times into his hand. Zamora "snapped" and said, "[Y]ou're not going to put your hands on . . . my girl." At that point, Zamora punched Appellant, and Appellant testified that he simultaneously punched Zamora while the screwdriver was in his hand. Appellant testified that he did not intend to stab Zamora and that he only intended to hit Zamora.

Gourley testified that she, Vasquez, Zamora, and Cody followed Appellant to his truck and told him to leave. Appellant's truck was parked between the group and Appellant. Gourley said that Appellant never said anything to the group and that Zamora followed Appellant into the street but was not aggressive or confrontational. When Gourley joined the two men in the street, grabbed Zamora's arm, and "told him [to] come on," Appellant pushed her. Zamora tried to punch Appellant, and then Gourley heard a "loud boom" and saw Zamora's eyes roll into the back of his head and his body fall to the ground.

Vasquez testified that as Appellant walked to his truck, he threatened to shoot all of the bystanders (including Zamora, Gourley, and Scoggins). According to Vasquez, he, Cody, Gourley, and Zamora followed Appellant to his truck and continued to follow him as he backed into the street. Vasquez testified that Appellant and Zamora were speaking but that he could not hear what they were saying. Zamora had a beer in his hand, but he put the beer down before he began struggling with Appellant. Vasquez testified that he thought he saw Gourley join the struggle between Zamora and Appellant and that eventually he saw Zamora fall to the ground.

4

Scoggins testified that she saw Zamora, Gourley, and Vasquez (and others that she could not identify) approach Appellant at his truck. Appellant backed away from the group, but they continued to walk toward him. Zamora was closest to Appellant. Zamora and Appellant struggled, and Scoggins saw Zamora fall.

Appellant was arrested and charged with murder.

**Sufficiency of the Evidence to Disprove Self-defense**

In his sixth issue, Appellant argues that the evidence is insufficient to disprove his self-defense claim. A defendant has the burden of producing some evidence to support a claim of self-defense.[2] The State has the burden of persuasion in disproving self-defense.[3] This burden does not require the State to produce evidence refuting the self-defense claim; rather, the burden requires the State to prove its case beyond a reasonable doubt.[4] Self-defense is an issue of fact to be determined by the jury.[5] A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory.[6]

---

[2]*Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

[3]*Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).

[4]*Id.*

[5]*Id.* at 913–14.

[6]*Id.* at 914.

In reviewing the sufficiency of the evidence to support the jury's rejection of Appellant's self-defense theory, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against him on the self-defense issue beyond a reasonable doubt.[7]

Appellant argues that the evidence admitted at trial supports his contention that he feared death or serious bodily injury. Zamora was a member of a group of at least three people who were approaching Appellant in a threatening manner. Appellant was attempting to leave in his pickup, but he could not find his keys. He stepped out of his pickup and grabbed a screwdriver from the toolbox in the bed of the pickup. The record does not reflect that anyone other than Appellant exhibited a weapon. Of the group of others, the record reflects that, at the time Zamora was stabbed, only Zamora attempted to fight. Appellant testified that both he and Zamora swung a punch at the same time. Appellant was holding the screwdriver.

"Deadly force" is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury."[8] Section 9.32 of the penal code provides,

> A person is justified in using deadly force against another . . . if the actor would be justified in using force against the other under

[7] *See id.*

[8] Tex. Penal Code Ann. § 9.01(3) (West 2011).

6

Section 9.31; and . . . when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force.[9]

Although Appellant is correct that he had the right to defend himself and was justified in the use of force, the record does not justify his use of deadly force because there is no evidence that anyone other than Appellant had a weapon or otherwise used or threatened deadly force.[10]  We therefore hold that the evidence is sufficient to support Appellant's conviction and the jury's rejection of his self-defense claim.  We overrule Appellant's sixth issue.

**Jury Selection Issues**

In his third issue, Appellant argues that the trial court committed reversible error when it denied his motion for access to information on potential jurors. Although Appellant argues (1) that the State indicated below that the information denied him was similar to the information contained on TCIC and NCIC and (2) that the trial court's refusal to provide him that information was a denial of due process, he correctly states that the record is silent as to what information the jail management software to which he sought access would have provided him. Without more, we cannot know the extent to which he was denied information not available elsewhere.  Nor can we know, without more, whether he could have

_____

[9]*Id.* § 9.32.

[10]*See id.*

7

secured the information by other means. Consequently, we are compelled to overrule Appellant's third issue.

In his fourth and fifth issues, Appellant argues that the trial court improperly sustained the State's challenges to two members of the venire. The first veniremember explained that the district attorney is married to her former husband. When asked if the relationship would cause her to "lean either one way or the other in this case even the slightest bit," she replied, "Possibly." She conceded that "[o]ne side could start out ahead or behind in [her] mind just because of [her] relationship." The trial court excluded her for cause over Appellant's objection.

The State discovered an active warrant for misdemeanor theft by check in regard to the other excluded veniremember, Duran. She admitted to a dispute over a check several years before trial, but she denied that there was an active warrant. Duran also admitted to having had a financial dispute with the medical provider complainant named in the warrant but stated that she had paid her debt and had no knowledge that a warrant had been issued. The trial court heard the State's information about the warrant and the veniremember's explanation. The trial court granted the State's challenge for cause over Appellant's objection. We cannot say that the trial court erred by crediting the State's statements that its records reflected an active warrant rather than the venire member's denial.

In any event, as to both veniremembers, we cannot say that their exclusion, even if error, requires reversal. The Texas Court of Criminal Appeals

8

has stated that "erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury."[11]   Under *Jones*, the issue is whether the sitting jurors were impartial.[12] Appellant does not challenge the sitting jury.  We therefore overrule Appellant's fourth and fifth issues.

**Jury Charge**

In his first issue, Appellant argues that the trial court's refusal to grant his request to incorporate the self-defense instruction into the application paragraph of the murder instruction constituted reversible error under *Almanza.*[13]  Appellate review of claimed error in a jury charge involves a two-step process.[14]  We must first determine whether error occurred.[15]

The trial court instructed the jury on murder and provided an application paragraph.  The charge then instructed the jury to consider self-defense if they found the State had proved murder but to consider manslaughter if they had a reasonable doubt that the State had proved murder.  After explaining self-

---

[11]*Jones* v. *State*, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998), *cert. denied*, 528 U.S. 985 (1999).

[12]*Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

[13]*Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex. Crim. App. 1985) (op. on reh'g).

[14]*Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

[15]*See Abdnor*, 871 S.W.2d at 731–32.

defense, the charge instructed the jury in an application paragraph dealing with self-defense in the murder context. The jury charge was sufficient to properly instruct the jury on self-defense and on the application of the law of self-defense to the facts of the case.[16] We overrule Appellant's first issue.

In his second issue, Appellant argues that the trial court reversibly erred by improperly instructing the jury on the requisite mental state of murder. We first determine whether error occurred.[17]

Murder is a result-oriented offense committed when the "conscious objective or desire of the perpetrator is to cause death or when the perpetrator is aware that his conduct is reasonably certain to cause death."[18] A proper jury charge does not contain the full statutory definition of "intentional" but only the portion of the definition requiring the jury to find that the defendant intended to cause a specific result of death.[19]

In the case now before this court, the trial court instructed the jury,

> A person acts intentionally, or with intent, with respect to the result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

---

[16]See *Caldwell* v. *State*, 971 S.W.2d 663, 666–67 (Tex. App.—Dallas 1998, pet. ref'd).

[17]*See Abdnor*, 871 S.W.2d at 731–32.

[18]*Martinez v. State*, 833 S.W.2d 188, 195 (Tex. App.—Dallas 1992, pet. ref'd).

[19]*Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994).

The State concedes that the trial court's abstract definition of "intentionally" is erroneous because it is not limited to the result of the conduct, that is, causing the death.[20]

When there is error in the trial court's charge but it was not preserved below, as in the case before us, we must decide whether the error was so egregious and created such harm that Appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred.[21]

Egregious harm "'is a difficult standard to prove and such a determination must be done on a case-by-case basis.'"[22] In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[23] Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case

---

[20] *See id.*

[21] *Almanza*, 686 S.W.2d at 171; *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

[22] *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (quoting *Hutch*, 922 S.W.2d at 172).

[23] *Almanza*, 686 S.W.2d at 171; *see generally Hutch*, 922 S.W.2d at 172–74.

11

for conviction clearly and significantly more persuasive."[24]  The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.[25]

Appellant testified that he knew that he had the screwdriver in his hand but that he did not intend to stab Zamora, only to hit him.  If the jury had believed Appellant's testimony, they would have found that Appellant did not intend to engage in the conduct.  That is, apart from any consideration of whether Appellant intended to cause Zamora's death, the jury would have found that he did not intend to stab Zamora.  We cannot say that Appellant suffered egregious harm from the trial court's erroneous instruction.  We overrule Appellant's second issue.

---

[24] *Taylor*, 332 S.W.3d at 490 (citing *Almanza,* 686 S.W.2d at 172).

[25] *Almanza*, 686 S.W.2d at 174.

**Conclusion**

Having overruled Appellant's six issues, we affirm the trial court's judgment.


LEE ANN DAUPHINOT
JUSTICE


PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 17, 2012