**AFFIRM; and Opinion Filed April 28, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00572-CR

**LARRY BUDOW, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 9**
**Dallas County, Texas**
**Trial Court Cause No. M-1645409**

## MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Schenck

A jury found Larry Budow guilty of assault with bodily injury and assessed punishment at ninety days' confinement. In his sole issue, Budow complains the trial court erred by failing to limit the definitions of the culpable mental state specifically to the result of the act charged, causing him egregious harm. We conclude any error in the jury charge did not result in egregious harm to Budow. Accordingly, we affirm the trial court's judgment. Because all issues are settled in the law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

On March 5, 2016, at approximately 4:45 p.m., Budow was involved in a vehicular accident with Ronald McCallum on interstate highway 75. At the time, Budow was driving a Dodge Durango SUV in the southbound HOV lane with his wife in the passenger seat. McCallum was driving a Toyota Scion in the adjoining lane. McCallum abruptly merged to the

left, driving over the traffic control pylons that separated the lanes and into the HOV lane in front of Budow's SUV. Budow was unable to stop and ran into the back of McCallum's vehicle, causing McCallum's vehicle to bounce off the guardrail before coming to a stop in the left center lane.

McCallum testified that when he exited his vehicle, Budow ran to him and punched him twice in the face, causing McCallum to fall to the ground. McCallum recalled that Budow called him a "faggot" and tried, but failed, to punch him a third time. McCallum testified he did not say anything to Budow and did not provoke or defend against Budow's attack. He was in shock. McCallum indicated he experienced pain several hours after the assault and needed to take pain medication for two-and-a-half weeks. McCallum insisted that his injury was not caused by the accident itself.

A bystander testified she witnessed the accident, stopped to render aid, and called 911. Before she could get out of her vehicle to check on the drivers, she saw Budow approach McCallum as he exited his vehicle, punch McCallum twice in the face, and attempt to punch him a third time. She described the punches as being "very forceful" and stated Budow was "definitely . . . throwing his whole body weight into it." She indicated McCallum did not react, but stumbled backwards. She ran to McCallum after Budow retreated to his vehicle and told McCallum to sit down and that the paramedics were on the way. She observed McCallum was in pain and was "very shaken up." He had a bloody knot on his forehead and blood on his arms and legs.

Richardson Police Officer Lee Nori testified he and his partner were dispatched to the scene of the accident. He observed Budow's vehicle in the HOV lane with heavy front end damage. McCallum's vehicle was in the left, center lane and had heavy damage to its rear. He indicated he spoke with and obtained written statements from Budow, McCallum, and the eye

witness. Budow denied striking McCallum. In his written statement, Budow indicated he exited his SUV to get McCallum's license plate number before he could flee. He said McCallum accused him of causing the accident, in response to which Budow told McCallum he was crazy, the accident was his fault, and he needed to "stay back." Budow claimed he then returned to his vehicle. Officer Nori further testified that McCallum was injured, very shaken and was being treated by the fire department when he arrived. Another officer told him that an assault had occurred, which was later confirmed to him by McCallum. Officer Nori also testified he spoke with Budow's wife, who confirmed Budow was upset when he approached McCallum's car to exchange information. She claimed Budow never swung at McCallum. Officer Nori took pictures of both men at the hospital. He photographed a cut or abrasion on Budow's right knuckle. That photograph was published to the jury.

Dallas Police Sergeant Keitric Jones testified that while he was off duty, driving northbound on interstate highway 75, he observed a short, heavy-set white or Hispanic gentleman in a black T-shirt swinging at a black male.[1] Sergeant Jones called 911 and reported what he saw.

Chiron Hale, a detective in the crimes against persons unit of the Richardson Police Department, testified multiple 911 callers stated that McCallum was on the ground.

Budow's wife testified she and her husband were traveling southbound on interstate highway 75 in the HOV lane when McCallum's vehicle suddenly drove over the pylons separating the HOV lane and right in front of them causing the collision. Budow's wife stated McCallum had driven his vehicle about a quarter mile down the road and it appeared as if he was trying to flee the scene of the accident. She indicated her husband left their vehicle carrying his water bottle and his sun glasses. He was upset. She recalled that McCallum walked towards

---

[1] Budow is a heavy-set white male and McCallum is a thin black male.

their vehicle while talking on his cell phone. She testified she never saw Budow strike McCallum and urged the combination of Budow being overweight, his hernias, and injuries from the accident would render him incapable of assaulting someone. She admitted she was a biased witness and did not want to see her husband convicted of an assault charge. Appellant did not testify.

## DISCUSSION

Section 6.03 of the penal code provides three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03 (West 2011); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). A trial court errs by failing to limit the definitions in the charge to the culpable mental states to the conduct element or elements of the offense to which they apply. *See Patrick v. State,* 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

As applicable here, a person commits assault bodily injury if the person "intentionally, knowingly, or recklessly causes bodily injury to another...." TEX. PENAL CODE ANN. § 22.01(a)(1). An offense defined by causing bodily injury—such as assault causing bodily injury—is a result-of-conduct offense. *See Garfias v. State*, 424 S.W.3d 54, 60 (Tex. Crim. App.), *cert. denied*, 135 S.Ct. 359 (U.S. 2014).

In his sole issue, Budow argues the jury charge was erroneous because the definitions set forth at the beginning of the charge instructed the jury that the law applicable to the offense of assault, which requires a finding the accused "intentionally" or "knowingly" or "recklessly" caused bodily injury to another, included nature of the conduct, and circumstances surrounding the conduct language when assault causing bodily injury is a result-of-conduct offense. He contends he suffered egregious harm from this alleged error. The State concedes the instructions

–4–

on the culpable mental states as defined at the beginning of the court's charge are not specifically tailored to the result-of-conduct offense charged in this case, but contends any error did not result in egregious harm.

The jury charge included all three conduct elements identified in section 6.03 of the penal code in the culpable mental state definitions.[2] Because the offense at issue here did not include two of the conduct elements, namely a nature of conduct and circumstances surrounding the conduct elements, "the trial court erred by failing to limit the definitions of "intentionally," "knowingly," and "recklessly" to result of conduct." *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994). Budow did not object to the definitions at trial; accordingly, any error in those definitions is reversible only if Budow was egregiously harmed such that he was denied a fair and impartial trial. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013).

Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Id.* Egregious harm consists of error affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. *Id.* (citing *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). We assess the degree of harm in light of the entire jury charge, the state of the evidence as a whole, taking into account the contested issues and the weight of probative evidence, the arguments of counsel, and any other relevant information in the record. *Id.*

In determining harm, we look at the charge as a whole, including the portion that sets

---

[2] The definitions as set out in the jury charge read as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the defendant's standpoint.

forth the application of the law to the offense specifically charged in the case. *See Patrick*, 906 S.W.2d at 492 ("In assessing harm resulting from the inclusion of improper conduct elements in the definitions of culpable mental states, we 'may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge.'" (quoting *Hughes*, 897 S.W.2d at 296)). In *Patrick*, the defendant was found guilty of capital murder while in the course of committing or attempting to commit burglary of a habitation. *Id.* at 491–92. The court then considered the application portion of the charge:

> Although the definitions of "intentionally" and "knowingly" indiscriminately set forth the three alternative conduct elements, when those terms are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense. *Hughes*, 897 S.W.2d at 297. For instance, the application paragraph states that appellant "did intentionally cause the death of [the victim.]" The term intentionally directly modifies the phrase "cause the death". Referring back to the definitions of culpable mental states, it is obvious that the "result of conduct" and cause the result language are the applicable portions of the full code definitions.

*Id.* at 493. The court concluded that "because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense." *Id.*

Here, the application paragraph instructed the jury to determine if Budow "intentionally or knowingly or recklessly caused bodily injury to another, namely: Ronald Earl McCallum . . . ." Budow does not claim that the application paragraph incorrectly applied the law, but urges that it did not further direct the jury to focus on the results of his actions. The terms intentionally, knowingly, or recklessly directly modify the phrase "causes bodily injury." Referring back to the definitions of culpable mental states, it is clear that the "result-of-conduct" portions of those definitions are applicable to the "cause the result" (bodily injury) language in the charge. *See id.* Thus, a further recitation concerning results of his actions was not essential

in the application paragraph itself.  Moreover, the definition portion of the charge instructed that assault is committed if a person "intentionally or knowingly or recklessly *causes* bodily injury to another." (emphasis added).  This instruction correctly limited the offense to the result of the conduct.  *See Hughes*, 897 S.W.2d at 296 (when definitions of culpable mental states are "viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense").  The placement of that definition and the language used in the application paragraph minimized any potential "confusion" about the abstract definitions.

Turning to the state of the evidence, Budow argues the combined effect of the jury charge definitions with the testimony and argument that McCallum's injuries could have occurred in other ways besides an assault likely confused the jury regarding whether to apply the nature-of-conduct or the result-of-conduct definition to the mens rea in the charge.  We disagree.

A culpable mental state is almost always proven by circumstantial evidence.  *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991) (mental culpability is of such nature that it generally must be inferred from circumstances under which the prohibited act or omission occurs). Intent or knowledge may be inferred from the acts, words, and conduct of the accused, as well as the extent of the injuries and the relative size and strength of the parties.  *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Patrick*, 906 S.W.2d at 487.

The broad definition of bodily injury "encompasses even relatively minor physical contact if it constitutes more than offensive touching.  Direct evidence that a victim suffered pain is sufficient to show bodily injury."  *Laster v. State,* 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) (footnotes omitted).  McCallum testified that Budow punched him twice and tried but failed to punch him a third time.  He also testified that Budow hit him hard, that he fell down, and that his injury started hurting several hours later, and that he was on pain medication for two-

and-one-half weeks. McCallum further testified that the injury to his head was not caused by the accident. McCallum's testimony was corroborated by the testimony of the unbiased eye witness and Sergeant Jones. The jury was the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *See Ortiz v. State*, 93 S.W.3d 79, 87–88 (Tex. Crim. App. 2002). It is clear from the jury's verdict that it believed McCallum, the eye witness, and Detective Jones and not Budow's wife. The evidence presented by McCallum, the eye witness, and Sergeant Jones concerning Budow's conduct, and upon which the jury rendered its verdict, was circumstantial evidence of his intent, knowledge, or recklessness regarding the results of that conduct. *See Laster*, 275 S.W.3d at 524 (because "[o]ne's acts are generally reliable circumstantial evidence of one's intent," jury could reasonably infer defendant "intended to do exactly what he did—to inflict bodily injury" on victim) (footnote omitted).

Budow also points to the closing arguments in support of his claims of harm, but there is nothing in the prosecutor's arguments that would confuse the jury as to the applicable conduct element. The State emphasized that it had to prove Budow intentionally, knowingly, or recklessly caused bodily injury to McCallum. The State highlighted the evidence Budow assaulted McCallum and the credibility and independence of the witnesses. The State did not argue the improper "nature of conduct" or "circumstances surrounding the conduct" language from the definitions of the culpable mental states. We find no other relevant information in the record.

Based on the entire record, the jury charge as a whole, and the arguments of counsel, we conclude Budow was not denied a fair trial; he did not suffer egregious harm due to the erroneous definitions in the charge. We overrule Budow's only issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

160572F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LARRY BUDOW, Appellant

No. 05-16-00572-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court
No. 9, Dallas County, Texas
Trial Court Cause No. M-1645409.
Opinion delivered by Justice Schenck.
Justices Lang and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of April, 2017.